SAM HUBBARD, JR, AND GEORGE E. MOON v. STATE OF INDIANA.

[No. 573S88.  Filed July 9, 1974.]

*Donald S. Eisenber*, of Madison, Wisconsin, *Arnold P. Baratz*, of Indianapolis, for appellants.

*Theodore L. Sendak*, Attorney General, *Robert F. Colker*, Assistant Attorney General, for appellee.

ARTERBURN, C.J.—The Appellants were indicted for First Degree Murder and Conspiracy to Commit Murder, and for Kidnapping. A jury found them guilty of First Degree Murder and Conspiracy to Commit Murder.

The facts are simple. In Indianapolis, one John Ross, a narcotics dealer, was approached by Appellants Moon and Hubbard, whom he knew slightly from Gary, for the purpose of testing some heroin. Ross and the murder victim, a woman named Uvet Staten, got into the back seat of a car driven by Moon. Hubbard was in the right front seat. Moon drove to a wooded area, stopped the car and pulled out a pistol. Ross and Staten bolted from the car. Hubbard shot Ross five times. Moon shot Staten seven times. Staten died, but Ross lived and testified to these facts.

The Appellants raised six issues. The State saw fit not to meet five of these issues on the merits. Instead, the State was content to allege waiver on the grounds that Appellants had not complied with Rule AP. 8.3(A)(7) by their failure to cite "authorities." The sub-section upon which the State relies reads as follows:

"(7)   An argument. Each error assigned in the motion to correct errors that appellant intends to raise on appeal shall be set forth specifically and followed by the argument applicable thereto. If substantially the same question is raised by two or more errors alleged in the motion to correct errors, they may be grouped and supported by one argument. *The argument shall contain the contentions of the appellant with respect to the issues presented, the reasons in support of the contentions along with citations to the authorities, statutes, and parts of the record relied upon, and a clear showing of how the issues and contentions in support thereof relate to the particular facts of the case under review.*" (our emphasis)

It should be obvious that the phrase "along with citations to the authorities . . . relied upon," assumes that such authorities exist. If there are no such authorities, the party could scarcely cite them. The phrase in question is not a technicality to be used to preclude a party from raising a novel issue, or in the light of new reasoning, suggesting a reconsideration of a settled rule of law. The function of the sub-section is to secure a convenient and uniform mode for presentation of issues to an appellate court. The Appellants' brief is satisfactory in this respect. The issues are clearly presented. The State ought to have met the merits.

As to these merits, Appellants' first issue is that the trial court committed reversible error in not granting a motion for severance for the reason that the eye-witness Ross did not see the defendant Moon shoot the deceased. Moon alleged that if severance were not granted he might be found "guilty by association." However, the evidence was that Ross *did* see Moon shoot the decease. Thus, there was no abuse of the discretion a trial judge has as to motions for severance. *Kirkland* v. *State* (1968), 249 Ind. 305, 232 N.E.2d 365; *Johnson* v. *State* (1964), 245 Ind. 295, 198 N.E.2d 373; *Sherwood* v. *State* (1960), 241 Ind. 215, 170 N.E. 2d 656. The judgment concerning the court's discretion is measured by what occurs at trial. *Garrison* v. *State* (1967), 249 Ind. 206, 231 N.E.2d 243.

Appellants' second issue is that two photographs of the deceased were of no probative value whatsoever and were introduced to inflame and prejudice the jury. The photographs made vivid what a witness narrated. We have repeatedly held that such kinds of pictures are admissible notwithstanding their unpleasantness. *Leaver* v. *State* (1968), 250 Ind. 523, 237 N.E.2d 368; *Kiefer* v. *State* (1958), 239 Ind. 103, 153 N.E.2d 899; *Wahl* v. *State* (1951), 229 Ind. 521, 98 N.E.2d 671.

Appellants complain that since the eye-witness did not testify at the Grand Jury hearing no probable cause could have existed for the indictment and that the indictment was originally brought against an unknown person, (i.e) "John Doe." Even a cursory reading of the pertinent statutes reveals that an indictment or information does not have to include a name, or if a wrong name is used "such defect shall not be a ground for dismissal. . . ." IC 1971, 35-3.1-1-2 and 15 [*Burns Ind. Ann. Stat.* § 9-904 and 917 (1973 Supp.)]. It is elementary that an indictment may not be questioned on the ground of insufficient evidence. *Stephenson* v. *State* (1932), 205 Ind. 141, 179 N.E. 633; *Guy* v. *State* (1906), 37 Ind. App. 691, 77 N.E. 855; *Pointer* v. *State* (1883), 89 Ind. 255. The sufficiency of the evidence is decided at trial.

Appellants' fourth issue is that they were prejudiced by ridicule which the prosecutor directed at a defense witness. The following is the colloquy complained of:

"A. Yeah, you'd like to get a fix, that's what you asked me, would you lie to get a fix, sure he would.

Q. O.K. Would you lie about anything if you were trying to get a fix?

A. If it would cause me to get a fix to get this misery off me, yes.

Q. Alright, if someone asked you a question but they couldn't give you a fix, would you give them the truth?

A. Depends on what the questions was, you understand . . . if it would happen to incriminate him or somethin' . . .

you know . . . he wouldn't care if you said you would give him a fix.

Q. What if somebody asked you what time it was and they couldn't give you a fix, would you lie about the time?

A. You say he give me a fix?

Q. No, he said he couldn't.

A. He asked me what time it was?

Q. Yes.

A. And I'm sick?

Q. Yes.

A. I wouldn't answer him. I wouldn't even be bothered with him . . . what you mean . . . asking me something like that an I'm sick . . . I . . . been a junkie and I know how it feel . . . I'm sick and somebody ask me what time it was . . . he better get outa space as long as he can't get me some stuff . . . what time it is . . . you might get knocked down . . . you asked me for the truth . . . so I'm givin' it to you, might get knocked down. What time it is . . . you crazy . . . what time it is, got to be . . .

*Court:* Mr. Breunig, did you get everything you asked for?

*Mr. Breunig:* Yes Your Honor.

A. I'm not trying to be funny, I'm just giving it to you like it is . . . you sick and someone . . . what time it is.

*Court:* Any further questions Mr. Breunig?

*Mr. Breunig: I'm just watching the show.* (our emphasis)

*Mr. Eisenberg:* No show. Excuse me Your Honor.

*Court:* Do you object?

*Mr. Eisenberg:* Yes Your Honor, I do. The State . . . I ask that the State's last statement be withdrawn and the jury be admonished to disregard for the sake of this witness.

*Court:* Jury will ignore comments of either attorneys. Do you have any further questions Mr. Breunig?

*Mr. Breunig:* No Judge.

*Court:* Mr. Jones?

*Mr. Jones:* Just one Your Honor.

*Court:* Just one, alright.

*Mr. Breunig:* One at a time . . .

*Court:* Now Mr. Breunig . . .

*Mr. Jones:* Judge, I am here to defend, and let this record show, a man charged with first degree murder, kidnapping,

conspiracy to commit a felony and I have just about had it Your Honor with this prosecutor cheap little remarks in front of this jury. . . .

*Mr. Breunig:* Your Honor . . .|

*Mr. Eisenberg:* Your Honor, I would also like to say here is a man that gets on the witness stand and says to this jury what he is and what he had been and to have him ridiculed, he should be admonished.

*Mr. Breunig:* Is this the final argument time . . .

*Mr. Jones:* Once again Your Honor, I would like to object to the prosecutors continual remarks.

*Court:* The objection will be noted and sustained. Mr. Breunig you are publicly admonished to refrain from making any comments about the witnesses testimony and the same would be true with any lawyer but particularly in this case Mr. Breunig. Alright, Mr. Jones, you have one question."

Appellants' brief contains no specificity of argument other than the assertion that the alleged ridicule occurred "solely because of the witness's mentality and background." We assume that Appellants have reference to the prosecutor's comment: "I'm just watching the show." The trial judge immediately sustained an objection and admonished the prosecutor. Appellants fail to show that this curative action was inadequate, and we think it was adequate. Admonishments and reprimands are presumed to have cured the misconduct of a prosecutor. *Temple* v. *State* (1964), 245 Ind. 21, 195 N.E.2d 850; *Loveless* v. *State* (1960), 240 Ind. 534, 166 N.E.2d 864; *Blume* v. *State* (1900), 154 Ind. 343, 56 N.E. 771.

Appellants' fifth issue is that it was reversible error for the prosecutor during final argument to recommend a witness's credibility on the ground that the witness had testified before a federal grand jury. That fact was in evidence; it is not improper for a prosecutor to give arguments as to the credibility of witnesses. If the reasons he advances for believing or disbelieving a witness are weak or illogical, that is a matter for the jury to weigh. 8A I.L.E.

*Criminal Law* § 486 (1971); *Smith* v. *State* (1938), 214 Ind. 169, 13 N.E.2d 562; *Wilson* v. *State* (1911), 175 Ind. 458, 93 N.E. 609; *Reed* v. *State* (1897), 147 Ind. 41 (wealth of witness).

The sixth and last contention presented in Appellants' brief is that the prosecutor in his closing remarks read from a dissenting opinion in a United States Supreme Court case, *United States* v. *Wade* (1967), 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926 (White, J. dissenting). The record fails to show any objection on that ground to support the contention made in Appellants' brief. However, we point out that it is permissible in a criminal case for opinions to be read and discussed before the jury in final argument as to the law and the facts. The Indiana *Constitution*, Article 1, Section 19, gives the jury in criminal cases the right to determine the law as well as the facts, and it is well settled in Indiana that reading from decisions to the jury is proper. *Bryant* v. *State* (1933), 205 Ind. 372, 186 N.E. 322; *Klepfer* v. *State* (1889), 121 Ind. 491, 23 N.E. 287; *Harvey* v. *State* (1872), 40 Ind. 516.

The objection which was preserved at trial was to the effect that what the prosecutor was reading would create in the mind of the jury an impression contrary to the presumption of innocence with which defendants are clothed. We fail to follow the reasoning in that regard; nevertheless, the objection on this ground was sustained. Furthermore, a proper presumption of innocence instruction was given by the trial judge. These curative measures were adequate.

The passages read by the prosecutor emphasized the point of view that at trial the role of a defense attorney is to serve his client rather than to join with law enforcement officers in an abstract search for truth. Appellants suggest that the reading of such a passage to the jury prejudiced them. We think that by the end of a long trial a jury can hardly be unaware of the role of defense counsel in our adversary system. In any event, this act of the prosecutor was not

such as to place the defendants "in grave peril" and thereby warrant a new trial. *White* v. *State* (1971), 257 Ind. 64, 272 N.E.2d 312.

For all of these reasons, the judgment of the trial court is affirmed.

All Justices concur.

NOTE.—Reported at 313 N.E.2d 346.