FLOYD KILGORE *v*. STATE OF INDIANA.

[No. 3-475A68. Filed September 9, 1976.]

*Anthony V. Luber,* of South Bend, for appellant.

*Theodore L. Sendak,* Attorney General, *John R. O'Bryan,* Deputy Attorney General, for appellee.

GARRARD, J.—A jury convicted Kilgore of committing a felony (robbery) while armed.

The evidence favorable to the state disclosed the following sequence of events.

In the early morning hours of July 28, 1972, after he had attended a union meeting, played some cards and had a number of beers at a bar, Mr. Stanley Rouch was flagged down by a black couple who were standing next to a 1966 or 1967 white Mercury which was parked on Chapin Street in the City of Elkhart. When Rouch stopped his car, the girl propositioned him. Rouch was then told by the man to drive down the alley, which he did. After the couple approached on foot and arrived at the car, the man pointed a gun at Rouch and held it from six inches to a foot away from his head. The man told Rouch to give him everything in his pockets. At the same time, he grabbed the keys from the ignition of the car. Rouch gave the man his wallet, which contained a ten dollar bill and three one dollar bills. After Rouch twice refused to take his pants and shoes off, the man struck him on the side of the head. The man then ordered Rouch out of the car and handed the gun to the girl, who held it on Rouch while the man searched Rouch's car. The man then took a pair of binoculars which he found in the glove compartment. Moments later, Rouch jerked free from the robber and ran down the alley. When he had gone approximately thirty yards, he heard a gunshot. After running out of the alley, Rouch noted the license number of the Mercury, which was still parked in the same place on Chapin Street.

These events transpired in approximately ten minutes. There was a street light at the beginning of the alley which shed light on the place of the robbery, and while the robber

was searching through the car, the dome light was on in the victim's vehicle.

After escaping, Rouch went to a house about two blocks from the place of the robbery where a woman called the police for him. The police arrived about ten minutes later, and Rouch described the robber to them as follows: he was wearing a blue hat with a short brim and a blue windbreaker; he was approximately six feet tall, thirty years of age, and had a light moustache.

Approximately one half hour after the robbery as a police officer was transporting Rouch to the police station to make a report, Rouch again saw the white Mercury on Chapin Street. He identified it by its license number as the one used by the robber. The police stopped this car and removed three black male occupants. Rouch was called over. He positively identified Kilgore as the man who had robbed him. At this time, Kilgore was not wearing a hat or a windbreaker. Rouch's identification of him was based on Kilgore's voice and appearance. The other occupants of the car were approximately the same height as the defendant; all were of medium build; none were wearing windbreakers or hats. Only Kilgore wore a moustache. All of the occupants were wearing dark clothing. Rouch stated that there was no doubt or possibility of any error that the defendant on trial was the robber.

The police officer who answered the victim's call stated that the lighting in the alley from Chapin Street was sufficient to see faces distinctly. He also testified that at the time of the incident, Rouch did not appear intoxicated, and that the manner in which he walked and talked were the same as when Rouch was in court testifying.

Kilgore's first assignment of error is the failure of the court to suppress or strike the identification testimony provided by Rouch at the trial. This assignment must fail. While identification testimony which is based upon an overly suggestive out of court identification

is to be excluded, confrontations made shortly after the commission of the crime are not *per se* improper even if limited to one suspect. *Dillard* v. *State* (1971), 257 Ind. 282, 274 N.E. 2d 387.

More significantly, an identification is permissible despite a suggestive pretrial confrontation where there is a factual basis for the identification independent of the pretrial confrontation. *Tewell* v. *State* (1976), 264 Ind. 88, 339 N.E.2d 792. Here the total circumstances testified to clearly establish an independent factual basis for Rouch's identification.

Since the identification evidence was proper and was adequate to sustain a conviction, we need not separately address Kilgore's assignment that the total evidence on the question of identification was insufficient to sustain the conviction.

During final argument, Kilgore's counsel proposed to read to the jury from *Simmons* v. *U.S.* (1968), 390 U.S. 377, on the question of identification testimony. The state objected, and the court sustained the objection. Kilgore asserts this was error since Article 1, Section 19 of the Indiana constitution makes the jury the judge of the law, as well as the facts.

Under our constitution it is proper for counsel to argue the law as well as the facts in a criminal case. *Hubbard* v. *State* (1974), 262 Ind. 176, 313 N.E.2d 346; *Bryant* v. *State* (1933), 205 Ind. 372, 186 N.E. 322. Accordingly, it is not error for the court to permit counsel to read from appellate decisions or learned treatises where it is clear that the matter quoted is argument and not evidence. *Hubbard, supra; Klepfer* v. *State* (1889), 121 Ind. 491, 23 N.E. 287; *Harvey* v. *State* (1872), 40 Ind. 516.

On the other hand, the control of final argument is generally a matter within the sound discretion of the trial court. *Kallas* v. *State* (1949), 227 Ind. 103, 83 N.E.2d 769, *cert. den.* 336 U.S. 940; *Lynch* v. *State* (1857), 9 Ind. 541. This discretion extends to the reading of "law" to the jury. *Murphy* v. *State*

(1855), 6 Ind. 490. As the court in *Murphy* pointed out, the court "would not be *bound* to sit and hear counsel read all the numerous treatises on criminal law to the jury; and if not all, why any?"

Thus, to establish error in the refusal, it is incumbent upon an appellant to demonstrate an abuse of discretion.

Nothing in the record demonstrates what portion of *Simmons* counsel proposed to read to the jury. We note, however, that *Simmons* dealt specifically with the dangers of photographic displays and identifications where police indicated to the witness the presence of other evidence which caused them to believe the perpetrator was among those being viewed. Such specific considerations were, of course, not present in this case.

We find that Kilgore has failed to demonstrate that the court abused its discretion.

In instructing the jury the court stated:

"You are instructed that this being a criminal case you are the exclusive judges of the law and the evidence, the credibility of the witnesses and the weight to be given to their testimony. The court does not intend to express any opinion concerning the weight of the evidence, but it is the duty of the court to advise you as to the law, and it is your duty to consider the instructions of the court; yet in your decision upon the merits of the case you have a right to determine for yourselves the law as well as the facts by which your verdict shall be governed.

It is your duty to reconcile the statements of witnesses so as to give credence to all of the testimony, if you can; but if you cannot do this on account of contradictions, then upon you rests the responsibility of determining whom you will or will not believe.

You are the sole judges of the credibility of the witnesses and of the weight to be given to the testimony of each of them. In determining the credit to be given and witness you may take into account his ability and opportunity to observe, his memory, his manner while testifying, any interest, bias or prejudice he may have, and the reasonableness of his testimony considered in the light of all the evidence in the case.

From all of the evidence, you will determine the guilt or innocence of the defendant, and make your verdict accordingly."

Kilgore objected to that portion which stated "It is your duty to reconcile the statements of witnesses so as to give credence to all of the testimony, if you can." It is claimed that the jury was thus advised that it could not discredit any testimony unless it was contradicted. *Limp* v. *State* (1950), 228 Ind. 361, 92 N.E.2d 549 is cited for the proposition that a jury is not bound to accept the testimony of a witness simply because it is not directly contradicted by other testimony.

We note that the quoted portion differs from pattern jury instruction § 1.15. That instruction provides:

"If there are conflicts in the evidence, it is your duty to reconcile the conflicts, if you can, on the theory that each witness has testified to the truth."

Thus, while both instructions proceed to advise the jury of its province in determining credibility if the evidence cannot be reconciled, the pattern instruction correctly places the obligation to attempt to reconcile where there is a conflict. Semantically, the instruction given by the court does not do this.

However, in reviewing instructions for harmful error, we are bound to consider the impact of the instructions as a whole. *Tewell* v. *State, supra.* We believe this also means that where a particular phrase is questionably ambiguous, we may consider the context in which it is used in determining whether the jury may have been prejudicially confused or misled.

The complained of language was sandwiched between admonitions that the jury was the "exclusive" and the "sole" judge of the credibility of the witnesses. In other instructions the court advised the jury of the burden of proof and the meaning of guilt beyond a reasonable doubt. At Kilgore's request, the jury was also instructed that:

"You are the sole judges of the credibility of the witnesses and have the responsibility of determining who you will or

will not believe. You are not required to accept as true all oral evidence but have the right to decide what you will or will not believe."

Considering the instructions as a whole, we find the jury was fairly instructed and no reversible error exists. *Cf. Stamper* v. *State* (1973), 260 Ind. 211, 294 N.E.2d 609, where the court held that similar language did not confuse the burden of proof placed upon the state.[1]

Judgment affirmed.

Hoffman, J., concurs; Staton, P.J., concurs and files separate opinion.

## CONCURRING OPINION

STATON, P.J.—I concur. However, I think that we should recognize that the fundamental right to counsel includes the right to make a final argument to the court or jury on the evidence. *Herring* v. *New York* (1975), 95 S.Ct. 2550. Final argument can not be denied to a criminal defendant. A trial court's discretion does not go this far. The trial court may limit the scope of closing argument and its duration. The trial court may direct defense counsel to stay within the bounds of the evidence to assure an orderly, fair trial. Any other limitation upon final argument must be reasonable. As the United States Supreme Court pointed out in *Herring* v. *New York, supra*, at 2556:

---

1. While the following arguments were not raised by appellant, we note that the "duty to reconcile" or "presumption of truthfulness" language in a credibility instruction does not impinge 5th Amendment rights where the defendant has elected not to testify. *Cupp* v. *Naughten* (1973), 414 U.S. 141. Although "duty to reconcile" language was disapproved in *Scheerer* v. *State* (1925), 197 Ind. 155, 149 N.E. 892, as being inconsistent with the presumption of innocence, our Supreme Court subsequently in *Hengstler* v. *State* (1934), 207 Ind. 28, 189 N.E. 623, held that the statement would not constitute harmful error in the absence of a specific request by the defendant to amplify the statement to also recognize that the evidence should be reconciled, if possible, with the presumption of innocence. The court in *Hengstler* further observed that if the jury were properly instructed on the presumption of innocence and the burden of proof, the inevitable result would be proper reconciliation of the evidence in this regard.

'Some cases may appear to the trial judge to be simple—open and shut—at the close of the evidence. And surely in many such cases a closing argument will, in the words of Mr. Justice Jackson, be 'likely to leave [a] judge where it found him.'[14] But just as surely, there will be cases where closing argument may correct a premature misjudgment and avoid an otherwise erroneous verdict. And there is no certain way for a trial judge to identify accurately which cases these will be, until the judge has heard the closing summation of counsel.[15]" (footnotes omitted).

Kilgore has failed to demonstrate on the record before this Court how *Simmons* v. *U.S.* (1968), 390 U.S. 377 is applicable to the evidence in his case and to the final argument that he planned to present. Without a record demonstrating a cogent application of *Simmons* v. *U.S.* to his proposed argument, this Court has no other choice but to affirm the trial court's ruling.

NOTE.—Reported at 354 N.E.2d 254.