Kenneth R. LAX, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 1179S326.

Supreme Court of Indiana.

Jan. 7, 1981.

Frederick T. Work, Gary, for appellant.

Theo. L. Sendak, Atty. Gen., Palmer K. Ward, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

In a trial by jury, Defendant (Appellant) was convicted of Robbery, a Class A Felony, Ind.Code § 35–42–5–1 (Burns 1979), and sentenced to thirty (30) years imprisonment. His direct appeal presents the following issues:

(1) Whether the trial court erred in not allowing a witness to relate defendant's religious activities.

(2) Whether the trial court erred in refusing to allow the defendant to call a certain witness.

(3) Whether the record demonstrates that prejudice of the trial judge denied him a fair trial and if so, whether the errors flowing from bias rose to the level of fundamental error;

(4) Whether the trial court erred in not permitting defense counsel to read certain excerpts from law books during closing argument; and

(5) Whether the trial court erred in failing to reinstruct the jury after deliberations had commenced.

\*    \*    \*    \*    \*    \*

## ISSUE I

■ The defendant contends that the trial court erred in not allowing a witness to relate the religious activities of the defendant. He asserts that the evidence would have tended to establish his good character, thus, bolstering his defense of mistaken identification and alibi. The contention is without merit.

The defendant cites the decisions of *Wagner v. State*, (1886) 107 Ind. 71, 7 N.E. 896 and *McQueen v. State*, (1882) 82 Ind. 72 to substantiate his position. However, these cases only support the proposition that evidence of a defendant's general character is admissible; they do not speak to the admissibility of specific laudatory acts. This is because such acts are generally not admissible to demonstrate one's reputation or character. *See Pointon v. State*, (1978) 267 Ind. 624, 372 N.E.2d 1159; *Vaughn v. State*, (1978) 269 Ind. 142, 378 N.E.2d 859. *See also McFarland v. State*, (1979) Ind., 390 N.E.2d 989; *Woods v. State*, (1954) 233 Ind. 320, 119 N.E.2d 558. The trial court did not err in disallowing the defendant to present evidence of specific acts of his good conduct.

## ISSUE II

The defendant next contends that the trial court erred in refusing to allow him to call a certain witness. The defendant's offer to prove was that if the witness were allowed to testify, he would relate that he was arrested on January 11, 1978 (the instant crime occurred on January 9, 1978). Further, the witness would testify that he was then told by a police officer that he fit the description of a suspect in the instant crime; that he was "very near" a composite drawing of that suspect; and that he was wearing the same clothing as the suspect. We view the trial court's ruling as being proper.

■ The record is not clear as to the reason that the court refused to permit the defendant to call the witness who was, at that time, standing trial in another courtroom. However, in view of the offer to prove, we need not consider the correctness of that ruling, because the offer to prove discloses that the anticipated testimony of the witness embodied inadmissible hearsay. " 'Hearsay evidence is testimony in court * * * of a statement made out of court, such statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out–of–court asserter.' " *Patterson v. State*, (1975) 263 Ind. 55, 56–57, 324 N.E.2d 482, 484 (emphasis deleted) (quoting *Harvey v. State*, (1971) 256 Ind. 473, 476, 269 N.E.2d 759, 760). The trial court did not err in refusing to allow the defendant to call the witness.

## ISSUE III

The defendant contends that the trial court was prejudiced against him, thereby denying him the due process right to a fair trial. The defendant complains of several instances of alleged judicial misconduct, the most notable being a question, which if overheard by the jury would have been depreciative of the testimony of two prior defense witnesses. The other instances alleged were the badgering of defense counsel and the prompting of objections by the State.

The instance first mentioned was a question addressed to counsel who had appeared on behalf of a witness who had been called. The question was an oblique comment upon the unlikelihood that the attorney, who is white, had ever been mistaken for the defendant, who is black. It was obviously ill–considered and inappropriate humor and was depreciative of the defense of mistaken identity. However, it occurred in a conference at the bench and, in all probability, without the hearing of the jury.

■ Finally, the defendant entered no objection to the judge's comments now complained of and made no motion for admonition with reference to them. He is, therefore, now in no position to complain, *see Faught v. State*, (1979) Ind., 390 N.E.2d 1011, as the conduct in no manner approached the level of fundamental error. *See Clark v. State*, (1976) 265 Ind. 161, 352

N.E.2d 762. *See also Nelson v. State*, (1980) 409 N.E.2d 637.

## ISSUE IV

The defendant contends that the trial court erred in not permitting his trial counsel, during closing argument, to quote from a United States Supreme Court opinion and a legal article. In support thereof, the defendant asserts that he has a right to read the "law" to the jury. We do not agree.

Article I, Section 19 of the Indiana Constitution gives the jury the right to determine the law, as well as the facts, in criminal cases. Because of this constitutional provision, a trial court may not unduly interfere with a defendant's presentation of legal argument. However, reading from cases and other legal authorities does not equate with arguing the law. *Lynch v. State*, (1857) 9 Ind. 541. As stated in *Murphy v. State*, (1855) 6 Ind. 490, 491: "The Court would not be bound to sit and hear counsel read all the numerous treatises on criminal law to the jury; and if not all, why any? Where would the Court stop?" It therefore follows that, while the reading of "law" to a jury is permissible, a trial court need not allow it in all instances. Rather, it is a matter of sound discretion, the exercise of which we will not overturn absent manifest abuse. *Lynch*, 9 Ind. at 541–42; *Sizemore v. State*, (1979) Ind.App., 391 N.E.2d 1179; *Kilgore v. State*, (1976) 170 Ind.App. 569, 354 N.E.2d 254. *See Hubbard v. State*, (1974) 262 Ind. 176, 313 N.E.2d 346; *Harvey v. State*, (1872) 40 Ind. 516; *Murphy*, 6 Ind. at 491. The defendant has not persuaded us that the trial court abused its discretion.

The defendant's reliance upon the decision in *Klepfer v. State*, (1890) 121 Ind. 491, 23 N.E. 287 is misplaced. In *Klepfer*, this court held that it was not prosecutorial misconduct for a prosecutor to read from our decisions and from "law books" during closing argument. *Id.* at 494, 23 N.E. at 288. Though we there stated that a prosecutor had a "right" to so read, we now perceive the use of that word as being ill–advised. We interpret *Klepfer* as standing for the proposition that it is not *ipso facto* misconduct for counsel to read the "law" to the jury and not for the proposition that the right may not be limited by the Court.

At first blush, our decision in *Trainer v. State*, (1926) 198 Ind. 502, 154 N.E. 273, also appears supportive of the defendant's assertion. However, a close examination of that case reveals the holding to be that it is reversible error to instruct a jury that it must not consider our decisions in reaching its verdict. *Id.* at 508–09, 154 N.E. at 275. To the extent that it may foster a belief in an absolute right to read "law" to the jury, it is expressly disapproved.

We further note that the defendant neither prefaced his attempted quotation with a statement that it was argument, *Kilgore*, 170 Ind.App. at 569, 354 N.E.2d at 256, *Sizemore*, 391 N.E.2d at 1182; *see Harvey*, 40 Ind. at 518–19, nor demonstrated how the so–called "law" he wished to quote pertained to his case. *Kilgore*, 170 Ind.App. at 573, 354 N.E.2d at 256–57. It appears that what he was proposing to read was a selected portion of an opinion which, taken out of context, would indicate that, as a matter of law, eyewitness identifications are inherently unreliable. Such is not the law and is not the holding of the case being quoted. Had counsel sought to read from the materials with the announced purpose of demonstrating judicial acknowledgment that eyewitness identifications are not infallible and must be assessed for credibility by the trier of fact, as other evidence is assessed, he would have been entitled to do so. The manner in which he proposed to read the materials, however, was improper, because it would have been misleading, and, under these circumstances, we find no error in the court's ruling.

## ISSUE V

The defendant's final contention is that the trial court erred in failing to reinstruct the jury. He submits that during deliberation, the jury foreman informed the bailiff that the jury was confused as to the varying degree of felonies. However, there is nothing in the record to substantiate the

submission. Therefore, there is no error presented. *Grimes v. State*, (1980) Ind., 412 N.E.2d 75. *Hill v. State*, (1977) 267 Ind. 411, 370 N.E.2d 889.

We find no error. The judgment is affirmed.

GIVAN, C. J., and DeBRULER, HUNTER and PIVARNIK, JJ., concur.