William E. SCHLABACH, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 3–783A217.

Court of Appeals of Indiana,
Third District.

Feb. 15, 1984.

Rehearing Denied March 28, 1984.

Thomas A. Murto,. Murto & Holbrook, Goshen, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

HOFFMAN, Judge.

Appellant William Schlabach was tried by jury on one count of delivery of a controlled substance, IND.CODE § 35–48–4–2, a Class B felony. The jury returned a guilty verdict, and the court sentenced Schlabach to ten years incarceration. Schlabach now appeals from the judgment of conviction.

At trial, Schlabach raised the issue of entrapment as an affirmative defense. He now contends that the State failed to prove beyond a reasonable doubt that he was predisposed to commit the offense charged.

The Indiana Legislature has chosen to recognize entrapment as a defense. IND. CODE § 35–41–3–9 provides:

"Sec. 9. (a) It is a defense that:

(1) the prohibited conduct of the person was the product of a law enforcement officer, or his agent, using persuasion or other means likely to cause the person to engage in the conduct; and

(2) the person was not predisposed to commit the offense.

(b) Conduct merely affording a person an opportunity to commit the offense does not constitute entrapment."

The burden of proof in entrapment cases was comprehensively covered in *Silva v. State*, (1980) Ind.App., 410 N.E.2d 1342. The Court stated that:

"[i]n summary, we are of the opinion that the authorities discussed above disclose, · relative to the burden of proof in entrapment cases, that the defense of entrapment is inserted into a case, and a prima facie defense of entrapment is made, when probative evidence is presented either by the State or the defendant, whether formally pleaded or not, that a government officer or his agent has solicited or has participated in the commission of the charged offense. The only burden of proof on the defendant is to adduce or bring forth some probative evidence of the officer's solicitation or participation if the State has not already done so. He does not bear the burden of persuasion since that burden of proof does not shift. Once the prima facie defense is thus made, there is thereby imposed upon the State the burden of proving the necessary predisposition on the part of the defendant to commit the offense. Insomuch as the question of predisposition is a question of subjective intent, it relates to one of the elements of the offense which must be proven be-

yond a reasonable doubt. The determination of such a question is exclusively for the jury."

410 N.E.2d at 1347.

As recently stated by the Supreme Court of Indiana:

"[a]n entrapment exists when a government agent or someone working for him persuades the defendant to commit the charged crime. *Drollinger v. State,* (1980) Ind., 409 N.E.2d 1084; *Stewart v. State,* (1979) [271] Ind. [169], 390 N.E.2d 1018. Entrapment does not occur when the government does no more than provide the defendant with the opportunity to commit an offense he is predisposed to commit. *Id.* The question of the predisposition of the defendant to commit the offense is a question of subjective intent and is one for the trier of fact to resolve. *Stewart, supra.* We use the normal test for sufficiency of the evidence when the issue of entrapment is raised. That is, we do not reweigh the evidence nor judge the credibility of witnesses."

*Hudgins v. State,* (1983) Ind., 443 N.E.2d 830, at 832.

A number of circumstances may be considered by the jury on the issue of predisposition in a drug case. These include: familiarity with drug terminology; possession of controlled substances as contraband; knowledge of prices and quantities of controlled substances; familiarity with a source of supply; multiple sales to an officer; and willingness to make future sales. *Stewart v. State,* (1979) 271 Ind. 169, 390 N.E.2d 1018; *Wilhelm v. State,* (1983) Ind. App., 446 N.E.2d 621.

[1] The record in the case at bar contains sufficient evidence from which the jury could find Schlabach predisposed to sell controlled substances. On January 21, 1982, an undercover policeman met Schlabach at the First Base Tavern in Goshen, Indiana. When asked whether he had any marijuana, Schlabach responded that he had an ounce, but it was of poor quality. When asked whether he had anything else to sell, Schlabach replied that he could pro-

vide some "Mr. Magic" for $4.00 a hit. "Mr. Magic" is the street name for blotter LSD. Schlabach then procurred a packet from his car and sold it to the officer for $40. When analyzed, the substance was positively identified as LSD (lysergic acid diethylamide). Schlabach's familiarity with drug terminology, possession of LSD and marijuana, knowledge of prices and quantities, and apparent willingness to sell LSD all support the jury's determination that he was predisposed to engage in prohibited conduct. The State adequately rebutted the defense of entrapment.

■ Schlabach next contends that the trial court erred in not permitting his trial counsel to quote from Indiana entrapment cases during closing argument. This same argument was presented to the Supreme Court in *Lax v. State*, (1981) Ind., 414 N.E.2d 555. The *Lax* opinion is instructive in this regard and worth quoting at length:

"Article I, Section 19 of the Indiana Constitution gives the jury the right to determine the law, as well as the facts, in criminal cases. Because of this constitutional provision, a trial court may not unduly interfere with a defendant's presentation of legal argument. However, reading from cases and other legal authorities does not equate with arguing the law. *Lynch v. State*, (1857) 9 Ind. 541. As stated in *Murphy v. State*, (1855) 6 Ind. 490, 491: 'The Court would not be bound to sit and hear counsel read all the numerous treatises on criminal law to the jury; and if not all, why any? Where would the Court stop?' It therefore follows that, while the reading of 'law' to a jury is permissible, a trial court need not allow it in all instances. Rather, it is a matter of sound discretion, the exercise of which we will not overturn absent manifest abuse. *Lynch*, 9 Ind. at 541–42; *Sizemore v. State*, (1979) [181] Ind.App. [409,] 391 N.E.2d 1179; *Kilgore v. State*, (1976) 170 Ind.App. 569, 354 N.E.2d 254. *See Hubbard v. State*, (1974) 262 Ind. 176, 313 N.E.2d 346; *Harvey v. State*, (1872) 40 Ind. 516; *Murphy*, 6 Ind. at 491. The defendant has not

persuaded us that the trial court abused its discretion.

"The defendant's reliance upon the decision in *Klepfer v. State*, (1890) 121 Ind. 491, 23 N.E. 287 is misplaced. In *Klepfer*, this court held that it was not prosecutorial misconduct for a prosecutor to read from our decisions and from 'law books' during closing argument. *Id.* at 494, 23 N.E. at 288. Though we there stated that a prosecutor had a 'right' to so read, we now perceive the use of that word as being ill-advised. We interpret *Klepfer* as standing for the proposition that it is not *ipso facto* misconduct for counsel to read the 'law' to the jury and not for the proposition that the right may not be limited by the Court.

"At first blush, our decision in *Trainer v. State*, (1926) 198 Ind. 502, 154 N.E. 273, also appears supportive of the defendant's assertion. ·However, a close examination of that case reveals the holding to be that it is reversible error to instruct a jury that it must not consider our decisions in reaching its verdict. *Id.* at 508–09, 154 N.E. at 275. To the extent that it may foster a belief in an absolute right to read 'law' to the jury, it is expressly disapproved.

"We further note that the defendant neither prefaced his attempted quotation with a statement that it was argument, *Kilgore*, 170 Ind.App. at 569, 354 N.E.2d at 256, *Sizemore*, 391 N.E.2d at 1182; *see Harvey*, 40 Ind. at 518–19, nor demonstrated how the so-called 'law' he wished to quote pertained to his case. *Kilgore*, 170 Ind.App. at 573, 354 N.E.2d at 256–57. It appears that what he was proposing to read was a selected portion of an opinion which, taken out of context, would indicate that, as a matter of law, eyewitness identifications are inherently unreliable. Such is not the law and is not the holding of the case being quoted. Had counsel sought to read from the materials with the announced purpose of demonstrating judicial acknowledgement that eyewitness identifications are not infallible and must be assessed for credibility by the trier of fact, as other evi-

dence is assessed, he would have been entitled to do so. The manner in which he proposed to read the materials, however, was improper, because it would have been misleading, and, under these circumstances, we find no error in the court's ruling."

414 N.E.2d at 557.

In the case at bar, the State objected to reading from case law on the basis that it would be used to demonstrate what circumstances constitute "predisposition" under the entrapment statute. This is a matter best left to final instructions. It would be easy to mislead a jury on a subject as complex as entrapment through select recitation of facts and holdings of case law. The trial court did not abuse its discretion in disallowing the reading of case law.

Schlabach also maintains that the trial court erred in admitting the results of three chemical tests into evidence. While Schlabach concedes that the State's witness, Troy Ballard, was properly qualified to testify as an expert in the field of chemistry, he now claims that the State failed to establish an adequate foundation demonstrating the reliability of tests used.

■ Ballard conducted three tests on the substance, all resulting in positive identification. He testified that these were the standard tests performed at the Indiana State Police Laboratory for the purpose of identifying LSD. Ballard also testified that he was trained to conduct these tests properly, by another chemical expert. On cross-examination Ballard admitted that *one* of the three tests administered *might* result in a false positive. However, Ballard's opinion was based on the entire set of tests, prescribed by the Indiana State Police Laboratory. All factors considered, it appears that a proper foundation was established, and the test results were properly admitted into evidence. *See Patterson v. State*, (1970) 255 Ind. 22, 262 N.E.2d 520.

Finally, Schlabach argues that the State failed to establish an adequate chain of custody with regard to the LSD purchased from him.

■ The purpose behind requiring a continuous chain of custody from seizure to admission at trial is to lay a proper foundation connecting the evidence with the accused while negating any substantial likelihood of tampering, loss, substitution, or mistake. *Arnold v. State*, (1982) Ind., 436 N.E.2d 288. Although a continuous chain of custody must be shown, the State need not exclude every remote possibility of tampering. *Stewart v. State*, (1982) Ind., 442 N.E.2d 1026. Instead, the State need only provide reasonable assurance that the exhibit has passed through various hands in an undisturbed condition. *Stewart, supra.* The mere possibility of tampering does not render an exhibit inadmissible. *Wade v. State*, (1979) 270 Ind. 549, 387 N.E.2d 1309.

■ Schlabach now contends that there was no evidence generated at trial concerning the receipt of the LSD from the U.S. Mail or of details indicating proper care was taken to safeguard the exhibit.

The record indicates a sufficient chain of custody. Officer Gaff transferred the packet purchased from Schlabach to Sergeant Slayton of the Elkhart Police Department. Sergeant Slayton dated it, logged it in police files, and secured the packet. Lieutenant Thomas prepared the exhibit for transfer and sent it via certified mail to the Indiana State Police Laboratory in Lowell, Indiana. Troy Ballard, a chemist at the lab, testified that he had to cut open the plastic evidence bag in which the LSD had been placed by Elkhart police, prior to testing the substance. He then resealed the packet and returned it to Elkhart police via certified mail.

The LSD remained in police custody excepting that time spent in the mail. This establishes the continuous whereabouts of the substance up to the time tested. Furthermore, the sealing of the packet by Elkhart police before sending the evidence and the chemist's testimony that he had to cut the sealed bag open prior to testing indicates sufficient precaution against tampering. *Gilliam; Braxton v. State*, (1978) 270 Ind. 71, 383 N.E.2d 297.

The judgment of conviction is affirmed.

Affirmed.

STATON, P.J., and CONOVER, P.J., by designation, concur.