**Kenneth Robert LAX, Petitioner,**

v.

**Jack R. DUCKWORTH, and Indiana Attorney General, Respondents.**

**Civ. No. S 88–244.**

United States District Court,
N.D. Indiana,
South Bend Division.

Feb. 7, 1989.

Kenneth Robert Lax, Michigan City, Ind., pro se.

Sabra A. Weliever, Deputy Atty. Gen., Indianapolis, Ind., for respondents.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

On April 28, 1988, *pro se* petitioner, Kenneth Robert Lax, filed a petition seeking relief under 28 U.S.C. § 2254. The record discloses that there has been the necessary compliance with *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir.1982). The state record has been filed and examined pursuant to the mandates of *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

The petitioner was convicted in the St. Joseph Superior Court of Robbery, a Class A felony, on March 30, 1979. He was sentenced to a presumptive term of 30 years. By post-trial stipulation, that sentence was later reduced to 26 years. A direct appeal was taken to the Supreme Court of Indiana, which unanimously affirmed the aforesaid conviction in an opinion reported in *Lax v. State*, 275 Ind. 34,

414 N.E.2d 555 (1981). The opinion was authored by Justice Prentice.

Thereafter, the petitioner filed a petition for post-conviction relief which was heard by the Honorable Robert L. Miller, Jr., then a Judge of the St. Joseph Superior Court. The petition was denied and the denial was unanimously affirmed by the Court of Appeals of Indiana, Fourth District. The unpublished opinion was authored by Judge Young on March 17, 1987. Although the opinion was unpublished, it is cited at 505 N.E.2d 509 (1987). The decision is fully incorporated by reference and is attached hereto as Appendix "A". The findings of fact as recorded in the aforementioned decision are presumably correct.

Justice Stewart, speaking for the Supreme Court of the United States in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), stated:

A judgment by a state appellate court rejecting a challenge to evidentiary sufficiency is of course entitled to deference by the federal courts, as is any judgment affirming a criminal conviction. But Congress in § 2254 has selected the federal district courts as precisely the forums that are responsible for determining whether state convictions have been secured in accord with federal constitutional law. The federal habeas corpus statute presumes the norm of a fair trial in the state court and adequate state postconviction remedies to redress possible error. See 28 U.S.C. § 2254(b), (d). What it does not presume is that these state proceedings will always be without error in the constitutional sense. The duty of a federal habeas corpus court to appraise a claim that constitutional error did occur—reflecting as it does the belief that the "finality" of a deprivation of liberty through the invocation of the criminal sanction is simply not to be achieved at the expense of a constitutional right—is not one that can be so lightly abjured.

*Id.* at 323, 99 S.Ct. at 2791. *See also Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981); *Dooley v. Duckworth*, 832 F.2d 445 (7th Cir.1987),

*cert. denied*, 485 U.S. 967, 108 S.Ct. 1239, 99 L.Ed.2d 438 (1988); *United States ex rel. Haywood v. O'Leary*, 827 F.2d 52 (7th Cir.1987); *Bryan v. Warden, Indiana State Reformatory*, 820 F.2d 217 (7th Cir. 1987), *cert. denied*, 484 U.S. 867, 108 S.Ct. 190, 98 L.Ed.2d 142 (1987); *Shepard v. Lane*, 818 F.2d 615 (7th Cir.1987), *cert. denied*, 484 U.S. 929, 108 S.Ct. 296, 98 L.Ed.2d 256 (1987); and *Perri v. Director, Department of Corrections*, 817 F.2d 448 (7th Cir.1987), *cert. denied*, 484 U.S. 843, 108 S.Ct. 135, 98 L.Ed.2d 92 (1987).

In the present petition, the petitioner raises four grounds for relief under § 2254, as follows:

1. The prosecutor deliberately withheld evidence that he knew to be favorable to the petitioner;

2. Petitioner Lax's petition for post-conviction relief should have been granted on the grounds of newly discovered evidence;

3. Petitioner was denied his right to effective assistance of counsel;

4. The trial judge violated petitioner Lax's Due Process right when he relied on misinformation and invalid convictions contained in the presentence investigation report, when sentencing Lax.

There can be no doubt that *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) impose a general due process obligation to disclose information favorable to a criminal defendant that is in the possession of the prosecutor. This right has been recently discussed by the Court of Appeals in this Circuit in *United States v. Zambrana*, 841 F.2d 1320 (7th Cir.1988).

There is a suggestion that there has been a procedural default with regard to this issue, but this court is reluctant under *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), and *Smith v. Murray*, 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986), to go that route in the face of the charge that counsel has been ineffective under the Sixth Amendment of the Constitution of the United States.

Therefore, it is necessary to deal with the merits of this claim.

■ The issue here pertains to a failure to provide discovery in regard to police mug shots. At the PCR hearing, Sergeant Grabner testified that police mug shot files are constantly being updated. Each time a person is arrested, a new picture is taken and the older picture in the police files is replaced. *See* PCR record, page 265. In the state's response to discovery which was provided to the petitioner, the current picture was taken out of the so-called mug book. Apparently, counsel for petitioner had also had the picture in his possession for quite some time and could have easily discovered an error by simply looking at the dates.

The true test for non-disclosure of alleged exculpatory evidence is whether the omitted evidence creates a reasonable doubt that did not otherwise exist. This is the specific teaching of the opinion of Justice Stevens in *United States v. Agurs, supra.* In this case, the evidence was not exculpatory. A witness identified the petitioner from the picture. Defense counsel attempted to use the picture to show that the witness, Elliott, picked out a picture of the petitioner with a moustache when she had not told the police sketch artist that her attacker had a moustache. This point was made abundantly to and in the presence of the jury when a considerable number of witnesses testified that the petitioner had worn a moustache ever since he had been able to grow one.

The petitioner claims that the picture used in the lineup is newly discovered evidence that entitles him to a new trial. For such a decision to become grounds for relief under § 2254, the same must be a constitutional error. *See Bell v. Duckworth,* 861 F.2d 169 (7th Cir.1988). A petitioner must establish that the alleged error constituted a fundamental defect which inherently results in a complete miscarriage of justice. *See Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962), and *Stone v. Powell,* 428 U.S. 465, 477 n. 10, 96 S.Ct. 3037, 3044 n. 10, 49 L.Ed.2d 1067 (1976).

It is elementary that any such newly discovered evidence must have been discovered since the trial. Here, the petitioner knew the photograph existed and could have been obtained by requesting a continuance of the trial. However, this court will not bottom the decision on that fact alone. The more fundamental question is whether the introduction of this photograph could have affected the verdict. It did not.

The question of whether the attacker of Mrs. Elliott had a moustache, and whether she reported that as a part of the identifying description was a question litigated extensively in this case. It is most doubtful that this particular item of withheld evidence would have caused a different result.

The next issue is whether there was effective assistance of trial counsel under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which requires a two-prong consideration. First, there must be a showing that counsel's performance was deficient, and secondly, there must be a showing of actual prejudice resulting therefrom. The specifications of the inadequacy of counsel are as follows:

1. Counsel failed to request a continuance when he discovered the photograph produced in discovery was not the one used in the lineup;

2. Counsel failed to call Alma Traylor as a witness;

3. Counsel failed to conduct any additional discovery of his own;

4. Counsel advised petitioner not to testify without investigating the validity of petitioner's prior convictions;

5. Counsel failed to move for suppression of the victim's in-court identification of the petitioner; and

6. Counsel should not have allowed Alma Traylor to talk to the judge by herself.

■ Petitioner asserts that trial counsel should have requested a continuance when it was discovered that the prosecution had produced the wrong picture during discovery. If counsel had requested a continuance, he could have gotten the correct

picture and introduced it to the trial. The question to decide is what difference either of those events would have made. The witness testified that the petitioner's moustache on January 15, 1978, was thinner than it was on February 15, 1978, the date the produced picture was taken. The argument that the picture was designed to support was well and clearly made before the jury. It does not constitute failure of trial counsel to be effective under the Sixth Amendment.

■ Petitioner contends that his counsel should have called Alma Traylor as a witness. During cross-examination of the victim, petitioner's counsel asked her the following question:

"Didn't you have a conversation out here just this noon with the prosecutor to the extent that you said you were not certain that Mr. Lax here was the man that took your possessions?"

The prosecutor objected, the jury was excused and Alma Traylor was brought into the courtroom. She told the judge that she overheard a conversation in the hallway outside the courtroom between the victim and the prosecutor. At pages 278 and 279 of the record, she said:

"She told him she couldn't be sure. He told her, he said 'Can't you make an identification?' She said 'I just can't be sure.' And then he told her, he told her,—almost told her to say she was sure and then he took her by the arm and brought her back in here."

A further discussion ensued between the state trial judge and Mrs. Traylor as follows:

THE COURT: What is your connection with the Defendant?

ALMA TRAYLOR: None.

THE COURT: You don't know him?

ALMA TRAYLOR: I know him but I don't have any connection.

THE COURT: Why are you here listening to the case?

ALMA TRAYLOR: Why not, everybody else is.

THE COURT: You must have had more reason than that to be here.

ALMA TRAYLOR: I just came to listen to the case. This is not the first I came to listen to.

MR. BRENNAN: Well, you're acquainted with some of the Lax Family?

ALMA TRAYLOR: Right, right. I am.

MR. BRENNAN: You go to that church or something?

ALMA TRAYLOR: Right, and plus that if you'd be on trial today, I might have came and listened to your trial.

During a later break in the proceedings, Alma Traylor met with a state trial judge in chambers and admitted that the petitioner was her brother, after she had just denied in open court that she had any connection with him. The question propounded to the victim witness was permitted and the victim witness denied that any such conversation took place. *See* page 292 of the state transcript.

In *Strickland, supra,* the Supreme Court of the United States held that the "benchmark for judging any claim of ineffective assistance of counsel must be whether counsel's conduct so undermined the proper function of the adversarial process that the trial cannot be relied on as having produced a just result." 466 U.S. at 686, 104 S.Ct. at 2064. *Strickland* provided a two-step analysis under which the defendant must first show that counsel's performance was deficient, and second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. Under the first prong of the test, the reviewing court must determine whether trial counsel provided "reasonably effective" assistance considering all the circumstances. The defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id.* at 667, 104 S.Ct. at 2055. Strickland and the cases following have made it clear that the defendant (or petitioner in a § 2254 claim) has a heavy burden proving a claim of ineffectiveness of counsel. *Id.* at 689, 104 S.Ct. at 2065. *See also Jarrett v. United States,* 822 F.2d 1438 (7th Cir.1987), and *United States v. Buchbinder,* 796 F.2d 910 (7th Cir.1986).

Judicial scrutiny of defense counsel's performance should be highly deferential. Nothing in the case law pertaining to the Sixth Amendment right to effective counsel requires that an attorney exercise all possible procedural and substantive options.

Recently, Judge Eschbach, speaking for the court in *United States v. Grizales,* 859 F.2d 442 (7th Cir.1988), spoke wise words in regard to the concept of ineffective assistance of counsel. He stated:

The standard for evaluating a Sixth Amendment ineffective assistance of counsel claim is well-established. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), *quoted in United States ex rel Link v. Lane,* 811 F.2d 1166, 1170 (7th Cir.1987). To warrant reversal of her conviction appellant must show "(1) that counsel's representation fell below an objective standard of reasonableness and (2) that [she] was prejudiced by trial counsel's failure [to perform adequately]." *Lane,* 811 F.2d at 1170 (citing *Strickland,* 466 U.S. at 687–88, 104 S.Ct. at 2064–65).

The Supreme Court has instructed that in evaluating the performance of a trial attorney we are to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. Appellant "has a heavy burden in proving a claim of ineffectiveness of counsel." *Jarrett,* 822 F.2d at 1441 (citing *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064). The Supreme Court has further cautioned appellate courts to resist the temptation to "second-guess" the actions of trial counsel after conviction. *Id.* It is clear that the performance of trial counsel should not be deemed constitutionally deficient merely because of a tactical decision made at trial that in hindsight appears not to have been the wisest choice. *See Strickland,* 466 U.S. at 689, 104 S.Ct. at

2065; *United States v. Kennedy,* 797 F.2d 540, 543 (7th Cir.1986).

Reviewing courts are to presume that counsel's conduct falls within the range of reasonable, professional conduct. *See Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955). Defense counsel's conduct must be judged in the light of all the circumstances as to the time the action was taken, and not as a result of hindsight. *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066.

The defendant (or petitioner) must demonstrate not only that counsel's performance was professionally unreasonable, but also that it actually prejudiced his or her defense. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694, 104 S.Ct. at 2066. Thus, under this test, simply demonstrating that counsel's conduct was unreasonable does not establish prejudice to the defendant such that a new trial is required, or that a petition under § 2254 should be granted. However, it is necessary to view all alleged errors together when assessing an ineffective assistance claim. After all, the accumulation of enough independently non-fatal missteps can place counsel's performance outside the range of professionally acceptable performance. *United States ex rel. Garner v. McEvers,* 690 F.Supp. 635 (N.D.Ill.1988).

While the Supreme Court in *Strickland* established a two-step analysis for reviewing ineffective assistance of counsel claims, where it is clear that the alleged deficiency in counsel's performance was not so substantial as to prejudice a defendant, it is unnecessary for a reviewing court to determine whether counsel's performance was in fact ineffective. In the absence of any showing of prejudice, claims should be dismissed without further inquiry into counsel's performance. *See Strickland, supra; Buchbinder, supra;* and *United States v. Noble,* 754 F.2d 1324, 1355 (7th Cir.1985).

It was a strategic decision by counsel for petitioner to refrain from calling Alma Traylor as a witness. Alma Traylor had obviously lied under questioning by the court and those lies would have been used to impeach her on cross-examination by the prosecutor. The petitioner now claims that Traylor was confused by the court's questions. However, the record indicates that the questions were quite clear and Traylor was obviously trying to put some distance between herself and the petitioner in her answers. The late Judge Shepard J. Crumpacker, a fine lawyer and a very careful judge, suggested that it might look like a setup. *See* his comments at page 284 of state record. A vast majority of the petitioner's witnesses were members of his family and the impeachment of Alma Traylor could have provided the prosecution with additional ammunition. Defense counsel simply did not want to provide the same.

■ Attorney William Stanley, an experienced and competent lawyer practicing regularly before this court, represented the petitioner in the initial stages of his case. He filed a complete discovery motion on February 22, 1978. The petitioner contends that Mr. Brennan, who later represented the petitioner, should have filed his own discovery motion. He contends that the same would have produced the correct photographic lineup picture. There is no requirement under the Sixth Amendment of the Constitution of the United States or *Strickland, supra,* for new counsel to file repetitive motions for discovery. It is highly doubtful that any such motion would have produced different results here.

In the post-conviction hearing reflected in the state record at pages 270–291, there is an elaborate explanation by petitioner's counsel, Patrick Brennan, of his professional actions in this regard. That record does not reflect a violation of the standards for effective counsel under *Strickland, supra.* Also, the PCR testimony of Alma Traylor tends to support Mr. Brennan's professional judgment. She freely admits under oath that this petitioner is her brother. The full scope of her testimony is at pages 292–308.

■ The next argument is much more difficult to fathom. It begins with the predicate that a defendant charged in a criminal defense has an absolute right to remain silent and give no testimony in a trial in which that defendant is charged, as provided in the Fifth Amendment of the Constitution of the United States. As indicated in Rule 609 of the Federal Rules of Evidence, a defendant who takes the stand can be impeached by certain prior felony convictions. There are some due process limits on that idea, as reflected in *United States v. Ledford Gene Harding,* 525 F.2d 84 (7th Cir.1975). Apparently, one of the petitioner's prior convictions was later overturned on post-conviction relief. However, had he taken the stand at the time, it is highly likely that that prior conviction could have been used to impeach him under the law of Indiana. Such could certainly have been done under Rule 609 of the Federal Rules of Evidence and relevant Indiana authority. *See also Ashton v. Anderson,* 258 Ind. 51, 279 N.E.2d 210 (1972).

There is no requirement *per se* under *Strickland, supra,* or the Sixth Amendment that a defense counsel in a criminal case should review in detail the trial transcript of a defendant's prior criminal trials to determine whether there are reversible errors that might be reconsidered on a subsequent post-conviction review. In any event, the defendant (petitioner here) apparently exercised his Fifth Amendment right not to testify. It is difficult to find any basis on which he was prejudiced by any alleged shortfall in the trial counsel's conduct in this regard.

■ There is further challenge that the counsel for petitioner in the state court proceedings should have moved to suppress the victim's in-court identification. Here, the victim spotted the petitioner on her own in the hospital six days after the robbery. There was no police influence in the identification, nor was it suggested in the sense of the decision in *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). There is also no evidence of any taint in the photographic lineup. Under

the Fourth or Fifth Amendment, there was simply no basis for suppression of the victim's in-court identification. Consequently, it could not have been error for counsel to not present that challenge. Also, the in-court identification was well within the case law in the state of Indiana. *Grimes v. State*, 274 Ind. 378, 412 N.E.2d 75, 76 (1980).

█ Finally, the constitutional inadequacy of trial counsel for the petitioner is challenged on the ground that such counsel should not have allowed Alma Traylor to go to Judge Crumpacker alone and admit her perjury. Petitioner contends that counsel should have accompanied her. It is highly doubtful that any obligation that counsel would have had included involving himself in the interplay between Alma Traylor and a state court judge, in which that state court judge was accusing Alma Traylor of perjury. Quite to the contrary, it would seem that tactics and common sense would want that counsel to distance himself from that perjury. It is also elementary that there was no attorney-client relationship between Alma Traylor and petitioner's counsel, nor could there have been. Certainly, it is important for counsel to know what occurred between Judge Crumpacker and Alma Traylor, and that was made known to him.

█ The final assertions of the petitioner turn from an attack on his counsel to an attack on the state trial judge whom he now charges with relying on misinformation and invalid convictions in sentencing him. Certainly, the Due Process Clause of the Fifth Amendment, as well as the Due Process Clause of the Fourteenth Amendment can be implicated when a judge, either state or federal, relies on misinformation or invalid convictions in sentencing. *See United States v. Harris*, 558 F.2d 366 (7th Cir.1977). Here, one of the petitioner's prior convictions, a guilty plea, was subsequent to his sentencing here vacated on postconviction relief. The state court of appeals found that the petitioner had raised the issue of judicial misconduct on direct appeal, but did not present this ground. The Court of Appeals of Indiana held that

the petitioner had waived the issue by not raising it on direct appeal. The petitioner has now for the first time filed in this court a copy of the transcript of the PCR hearing in Cause Number 19878, which demonstrates that his guilty plea was vacated because the state judge there had not advised him of his right to a public and speedy trial.

Assuming that this issue was presented to the state courts first for its consideration, which may be a generous presumption, the same is without constitutional merit. The petitioner was sentenced to the presumptive term of 30 years under Indiana Code 35–50–2–4. The state trial court did not increase its sentence due to his prior criminal record. Even without the conviction described in Cause Number 19878, the petitioner has a prior valid conviction in Cause Number 19035. The only effect of the PCR in Cause Number 19035 was to vacate the probation violation finding. The conviction in that cause number remains in effect. Therefore, the petitioner would not have been eligible for a mitigation of his sentence, due to an absence of a prior criminal history because there was a valid prior conviction. This is looking at the record in a light most favorable to the petitioner.

This court is all too familiar with the mandates of *United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972). For recent decisions in this circuit dealing with the *Tucker* mandate, *see United States v. Vega*, 860 F.2d 779 (7th Cir. 1988); *United States v. Plain*, 856 F.2d 913 (7th Cir.1988); *United States v. Nesbitt*, 852 F.2d 1502 (7th Cir.1988); *Jones v. Thieret*, 846 F.2d 457 (7th Cir.1988). Of particular moment is the last word on this subject from the Seventh Circuit in *United States v. Turner*, 864 F.2d 1394 (7th Cir. 1989). This record should pass muster under Judge Woods' dissent there.

A key element that underlines the *Tucker* decision is the fact that the defendant there did not have assistance of counsel in the prior conviction proceedings. It should be emphasized, for what it is worth, that petitioner's conviction in Cause Number

19878 was not vacated on constitutional grounds. The requirement which mandated the withdrawal of the guilty plea was based on Indiana law as it then existed and was reflected in *German v. State*, 428 N.E.2d 234 (Ind.1981), and under Indiana Code 35–4.1–1–3, which has since been repealed. It is also of no small moment that the aforesaid 30–year sentence was by way of stipulation reduced to a term of 26 years.

A careful comparison of the facts here and in *Tucker* demonstrates that the latter presents no basis for compelling the granting of this writ under § 2254. When it is all said and done, there is no basis for relief under 28 U.S.C. § 2254. The same is now DENIED. IT IS SO ORDERED.