Roger C. DROLLINGER, Appellant,

v.

STATE of Indiana, Appellee.

No. 1178S262.

Supreme Court of Indiana.

Sept. 5, 1980.

and one count of delivery of phentermine, a Schedule IV substance, § 35–24.1–4.1–3. These deliveries were made in March and July of 1976, to two undercover State Police officers, Dale Conrad and Reginald Shireman. The two informations were consolidated for trial. Drollinger was tried to a jury in February, 1977, and found guilty on all counts. As a result of these convictions, Drollinger was sentenced to two one–hundred–eighty–day terms, one twelve–year term, two fifteen -year terms, and one six–year term. The trial court ordered these terms to be served concurrently. Appellant Drollinger was also fined in the aggregate amount of three thousand dollars.

Drollinger raises five issues on this appeal, concerning: (1) whether the trial court erred in admitting two exhibits into evidence; (2) whether the trial court erred in refusing to allow certain testimony from witness William Norris; (3) whether the trial court erred in allowing the prosecutor to cross examine Drollinger concerning previous charges which had been filed against him; (4) whether the trial court erred in allowing witness James McGivney to testify as to a conversation he had with Drollinger; and (5) whether the trial court erred in refusing to give one of the defendant's tendered instructions.

Harriette Bailey Conn, Public Defender, Kurt A. Young, Deputy Public Defender, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Richard Albert Alford, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant–appellant Roger C. Drollinger was charged in Montgomery Circuit Court in two informations with the following six counts: two counts of delivery of marijuana, Ind.Code § 35–24.1–4.1–10 (Burns 1975); one count of delivery of methamphetamine, a Schedule II substance, § 35–24.1–4.1–2; two counts of delivery of phendimetrazine, a Schedule III substance, § 35–24.1–4.1–2;

I.

Appellant Drollinger first argues that State's Exhibits numbers one and two should not have been admitted into evidence. These items consisted of the phentermine tablets and some of the marijuana which an undercover police officer purchased from Drollinger in March, 1976. Appellant claims the State did not prove a sufficient chain of custody of these articles to permit their introduction into 'evidence.

State Police Officer Dale Conrad testified that he purchased the marijuana on March 17, 1976. After receiving the bag from Drollinger, he placed it in his pocket. He later transferred the bag of marijuana to an evidence bag, upon which he placed his initials. Conrad then placed the bag in his briefcase, and placed the briefcase in the

trunk of his automobile. Both the briefcase and the trunk were locked. He transferred the marijuana to a State Police Chemist, George Smith, on March 19, 1976. The automobile remained in his possession during the time the briefcase was kept in the trunk. Officer Conrad purchased the phentermine on March 24, 1976. He followed the same procedure with the phentermine, locking the drugs in his briefcase and locking his briefcase in the trunk of his car. Conrad turned over this evidence to George Smith at the State Police laboratory on March 30, 1976. Smith tested the substances given to him and found them to contain marijuana and phentermine, respectively. Conrad testified that these exhibits were the same items which he had purchased from Drollinger, and Smith testified that they were the same items which Conrad gave to him and which he tested and returned to Conrad prior to trial.

We believe the testimony of these witnesses "strongly suggests the exact whereabouts of the evidence at all times," and provided the necessary assurance that the evidence "passed through the various hands in an undisturbed condition." *Lewandowski v. State*, (1979) Ind., 389 N.E.2d 706, 710, *quoted in Holt v. State*, (1980) Ind., 400 N.E.2d 130, 131. *See Graham v. State*, (1970) 253 Ind. 525, 255 N.E.2d 652. The trial court did not err in admitting these exhibits into evidence.

## II.

Appellant next contends the trial court improperly refused to allow testimony from defense witness William Norris. Drollinger's defense in this case was a modified version of the entrapment defense. He claimed that a Crawfordsville police officer, Louis Swenke, forced Drollinger, under threat of imprisonment and harm to his family, to sell drugs for Swenke. Drollinger claimed that this "negative inducement" amounted to entrapment. William Norris was offered as a defense witness in support of this theory. Under preliminary questioning by the prosecutor, Norris admitted that he did not know Drollinger, that he had not had any contact with Swenke in several years, and that he had no knowledge of the facts of this case. The trial court then sustained the prosecutor's objection to Norris' proposed testimony. According to defense counsel's offer to prove, Norris would have testified that Swenke was involved in drug traffic and had, at one time, pressured him and other persons to participate in the drug traffic.

We think the trial court properly rejected this evidence. Even assuming that competent evidence to support appellant's theory would constitute a valid entrapment defense, the trial court properly concluded that this witness could have provided no such competent evidence in this case. An entrapment occurs where a government agent or someone working for him, such an an informant, induces or persuades the defendant to commit the charged crime. The defendant must not have had any predisposition to commit the crime. Merely affording the accused the opportunity to commit the crime does not constitute entrapment. *Stewart v. State*, (1979) Ind., 390 N.E. 1018, 1021; *Cyrus v. State*, (1978) Ind., 381 N.E.2d 472, 473-74; *Hutcherson v. State*, (1978) Ind., 380 N.E.2d 1219, 1221. *See Hall v. State*, (1980) Ind., 403 N.E.2d 1382. Appellant argues that Norris' testimony would have shown a common scheme or plan on Swenke's part. Such a showing might be relevant if Swenke were on trial, but not in this case. Appellant asserts that evidence that Swenke somehow forced persons to sell drugs in the past would be probative on the question of whether he acted in a similar fashion on this occasion, and therefore, relevant to show that Drollinger was entrapped here. A showing of previous similar behavior not related to these transactions would have had no more of a valid purpose than if the prosecution had offered evidence of Drollinger's unrelated drug dealings to prove guilt of the charged crimes. Whether Drollinger was entrapped by Swenke in this case depends, in part, on Swenke's behavior with respect to Drollinger and these particular drug transactions, and does not depend on Swenke's alleged actions with

respect to other persons several years earlier. The jury must decide whether a defendant was the victim of entrapment by examining the facts of the case before it, not by speculation. *See Poindexter v. State,* (1978) 268 Ind. 167, 374 N.E.2d 509. Norris, by his own admission, could provide no evidence of what occurred in this case. For these reasons, the trial court did not abuse its discretion in refusing to allow Norris to testify.

### III.

Appellant Drollinger argues the prosecutor should not have been allowed to cross-examine him concerning prior convictions and pending charges. Drollinger testified in his own defense and explained how he concluded that Officer Swenke and other police officers had harassed him and were "out to get" him. On direct examination, Drollinger acknowledged that the probable cause affidavits in the present case had been signed by Officer Conrad and Officer Shireman. However, he testified that Officer Swenke had signed every other probable cause affidavit that had been filed against him. He specifically mentioned, among others, a forgery charge of which he was apparently acquitted. On cross examination, the prosecutor again asked Drollinger if Swenke had signed all of the probable cause affidavits filed against him and Drollinger again said he had. The prosecutor then singled out specific charges which, at one time or another, had been filed against Drollinger, and asked him if Swenke signed the probable cause affidavit in each of those cases. Appellant objected to the admission of any evidence concerning unrelated charges, citing *Ashton v. Anderson,* (1972) 258 Ind. 51, 279 N.E.2d 210.

 The trial court properly admitted this evidence. Drollinger's defense was based upon his claim that Swenke had, by duress, coercion and harassment, entrapped him into dealing in drugs. Swenke's involvement with and relation to Drollinger was brought up during Drollinger's testimony to support this theory. His testimony that Swenke had signed all the probable

cause affidavits against him was calculated to persuade the jury that, as Drollinger claimed, Swenke had been harassing him for several years. The prosecution was merely refuting this theory on cross-examination by challenging Drollinger's assertion. A defendant may not open an issue and have it closed at his convenience. *Goodpaster v. State,* (1980) Ind., 402 N.E.2d 1239, 1241; *Fortson v. State,* (1978) Ind., 379 N.E.2d 147, 153. *See Porter v. State,* (1979) Ind., 391 N.E.2d 801, 806. The trial court did not abuse its discretion in allowing this cross-examination. *See Ashbaugh v. State,* (1980) Ind., 400 N.E.2d 767, 772; *Gutierrez v. State,* (1979) Ind., 395 N.E.2d 218, 223.

### IV.

Drollinger next claims the trial court erroneously admitted certain testimony from rebuttal witness James McGivney. This testimony concerned statements Drollinger made to McGivney which were inconsistent with Drollinger's own testimony. As explained above, Drollinger's defense was that Crawfordsville police officer Louis Swenke had threatened and harassed him, and thereby entrapped him into making the drug deals in question here. He also claimed that Swenke was his supplier and the head of all drug traffic in Montgomery County. James McGivney was a narcotics agent who talked to Drollinger after the latter was arrested on these charges. Drollinger testified on cross examination that he fully discussed Swenke's alleged involvement in these matters with McGivney. McGivney testified as a rebuttal witness for the State. He stated that Drollinger may have mentioned Swenke's name in passing, but that Drollinger did not tell him of Swenke's alleged involvement with Drollinger or in the Montgomery County drug traffic. Appellant now claims this testimony was an effort by the prosecutor to impeach Drollinger on a collateral matter.

 We disagree. Whether a matter is collateral is determined by examining whether the party seeking to introduce the evidence would be entitled to do so as part of his case. *Bryant v. State,* (1973) 261 Ind.

172, 181, 301 N.E.2d 179, 184. Appellant Drollinger's alleged connection with Swenke was the integral factual issue of his defense. Appellant raised this matter when he testified and in other evidence he presented. The prosecutor first pursued the issue on cross-examination of Drollinger by asking if he had told McGivney about his relationship with Swenke. Drollinger claimed that he had, in fact, discussed this with McGivney. This testimony was certainly probative on the question of Drollinger's defense, and the prosecution was, therefore, entitled to rebut the evidence. *Norton v. State*, (1980) Ind., 408 N.E.2d 514; *Teague v. State*, (1978) 269 Ind. 103, 121 22, 379 N.E.2d 418, 427. This subject was not, then, a collateral matter, and the trial court properly allowed McGivney to give this rebuttal testimony. *Blum v. State*, (1925) 196 Ind. 675, 148 N.E. 193.

## V.

Finally, appellant Drollinger contends the trial court erred when it refused to give one of his tendered instructions. This instruction concerned the defense of entrapment, and provided as follows:

"If through deceit, misrepresentation, inducement, duress and persuasion, or other pressures an agent or agents of the State lured or coered [sic] the defendant into committing criminal acts which he would not have otherwise committed, then the defendant was entrapped.

At the outset of this case there was a presumption that there was no entrapment. However, as soon as the defendant, through his own witness or the State's witnesses, produced some evidence of entrapment, then the presumption that there was no entrapment dissolved. At that point the State assumed the burden of proof to show beyond a reasonable doubt that there was no entrapment of the defendant.

Unless you find that the State has proved beyond a reasonable doubt that there was no entrapment of the defendant, you must acquit the defendant since the defense of entrapment is an absolute bar to a finding of guilty."

Record at 100. Appellant contends this instruction properly stated the law and was not covered by the instructions which were given.

 However, we find that the trial court did give the following instructions:

"The defendant has raised the defense of entrapment. Such a defense is recognized in Indiana and gives rise to two questions of fact:

1. Did the specific intent to commit the particular offense charged originate with a law enforcement agent who then induced the defendant to commit the offense with which he is charged; and

2. If so, was the accused ready and willing to commit the offense charged whenever the opportunity to do so arose?

If the State of Indiana proves beyond a reasonable doubt either that a government agent did not originate the specific intent to commit the offense charged and then induce the defendant to commit the offense, or, even though the original intent originated with a government agent who then induced the defendant, if the State of Indiana proves beyond a reasonable doubt that the defendant was nevertheless ready and willing to commit the offense charged whenever the opportunity to do so arose, then the defendant was not entrapped and you should not acquit him by virtue of his defense of entrapment. If, however, the State of Indiana does not prove either of such issues beyond a reasonable doubt, you should acquit the defendant even though you determine that the defendant committed the acts charged.

It is the duty of conscientious and efficient law enforcement officers to make efforts to catch persons engaged in illegal activity; however, law enforcement officers may not incite or create crime for the sole purpose of punishing individuals. The idea must not be planted in the mind of the defendant by a law enforcement officer to violate the law. The idea must already be there and the law enforcement officer merely reveal it by his strategy.

Before you can convict the defendant there must be evidence which will rebut the presumption that the illegal transaction was induced solely by the plan of the law enforcement officers. The burden of proof is on the State and does not shift to the defendant. The evidence must show that the illegal transaction was actually that of the defendant and not that of the law enforcement officials or informer who was acting at the instigation of the law enforcement officials. The criminal design must originate in the mind of the defendant."

Record at 83–84. We believe this language properly and fully instructed the jury on the defense of entrapment. *Stewart v. State, supra; Cyrus v. State, supra; Hutcherson v. State, supra; Smith v. State*, (1972) 258 Ind. 415, 416, 281 N.E.2d 803, 804. Therefore, the court did not err in refusing the tendered instruction. *Norton v. State, supra; Lynn v. State*, (1979) Ind., 392 N.W.2d 449, 452; *Brown v. State,* (1979) Ind., 395 N.E.2d 776, 781.

Finding no error, we affirm the judgment of the trial court.