Terry WALLACE, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 984S371.

Supreme Court of Indiana.

Oct. 20, 1986.

Diane McNeal, Crown Point, for appellant.

Linley E. Pearson, Atty. Gen., Jody Cusson-Cobb, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Justice.

This case examines the roles of the defendant and police in undercover drug transactions. What is the minimum level of involvement for which the defendant will be criminally culpable? And, to what extent may police become involved in the drug dealings before entrapment becomes a viable defense?

Appellant Terry Wallace was convicted after a bench trial of two counts of dealing in a controlled substance, Schedule II, a class B felony, Ind.Code § 35–48–4–2 (Burns 1985 Repl.), and one count of dealing in a controlled substance, Schedule IV, a class C felony, Ind.Code § 35–48–4–3 (Burns 1985 Repl.). He was sentenced to concurrent terms of 15 years for each of the class B felonies and 8 years for the class C felony.

Wallace raises these issues in this direct appeal:

1) Sufficiency of the evidence, including whether the prosecution sufficiently rebutted the defense of entrapment, and

2) Whether police recordings of the drug purchases were admissible when offered by the defense.

The evidence at trial showed that Wallace agreed to work as a police informant while awaiting trial on unrelated drug charges. He was released on his own recognizance in exchange for his agreement to introduce undercover officers to a number of drug dealers. Wallace arranged one drug purchase but then refused to help police any further.

While Wallace was still out on bond, undercover officers, whose police capacity was not known to Wallace, used another informant named Tim to arrange a drug buy through Wallace. Tim called Wallace's friend, Chris Carpenter, and arranged a meeting at Wallace's home on July 13, 1983. After Tim and two undercover officers arrived, Wallace entered the unmarked police vehicle and directed them to a nearby apartment complex. He asked one officer how many "hits" of LSD he wanted. Wallace disappeared into one of the apartments while Tim and the officers remained

in the car. Wallace returned shortly, saying that he could get 50 hits for $120. He said the supplier did not have the drugs at his residence and wanted the money in hand before obtaining the LSD. The officer gave the cash to Wallace, who returned to the complex and came back with the drugs.

Wallace sought to buy one of the "hits" from the officer, who initially refused. Then Wallace took Tim aside and began yelling. Fearing for the informant's safety, the officer gave one "hit" to Wallace, who popped it in his mouth. Wallace told the officers that they should come back to see him anytime they wanted more LSD.

The officer's subsequent telephone calls to Wallace led to the present charges. During a conversation on August 23, 1983, Wallace said he could obtain some tuinals, barbituates with the street name of "trees." He said they would cost about $3 or $3.50 each. The officers met Wallace at his home. He said they would have to pick up another person, who then would direct them to a place where the purchase could be made. At Wallace's direction, they drove about a block and a half and picked up David Mak. Mak then gave directions to a house which he entered alone while the others waited in the car. Mak obtained 26 "trees" for the officers at an agreed price of $3.50 each. However, Mak kept two of the tablets for himself and gave two to Wallace for their role in the purchase.

On August 31, the officers returned to the Wallace home. Wallace and Mak entered the vehicle, and Mak gave directions to a city park and then to a bowling alley. Unable to locate the prospective drug source, Mak asked an unidentified person in the bowling alley to accompany them. That person directed the officers to the house where Mak had purchased the drugs the previous week. Mak entered the house and came back saying he could only get 5 "trees." After Mak reentered the house, Wallace asked the officers if they were interested in buying phenobarbitals left over from a bungled drug deal. The officer did not give a direct answer. Mak returned with the "trees," and Wallace asked him if he would mind selling the phenobarbitals for $50. Mak agreed, noting that $50 was all that they had invested in the "barbs," and the sale would prevent them from taking a loss.

The officers accompanied appellant and Mak back to Wallace's home. Wallace went into a bedroom and produced a plastic bag containing the "barbs," which he gave to the officer. Wallace picked up a copy of the Physician's Desk Reference from the nightstand and asked the officer if he wanted to check the photograph and detailed description of the drug contained in the book. Wallace subsequently was charged based upon the tuinal and phenobarbital transactions. No charges concerning the LSD purchase were filed.

*I. Sufficiency of the Evidence*

Wallace claims the evidence was insufficient to convict him of dealing in a Schedule II controlled substance on August 23 and August 31. When reviewing such claims, this Court will neither reweigh the evidence nor judge the credibility of witnesses. *Loyd v. State* (1980), 272 Ind. 404, 398 N.E.2d 1260, *cert. denied* 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105. We will look only to the probative evidence, and the reasonable inferences therefrom, which support the verdict to determine whether a reasonable trier of fact could conclude that the defendant was guilty beyond a reasonable doubt. *Id.*

■ Wallace claims his involvement was too minor to warrant conviction because he merely introduced a drug buyer to a seller. However, one who aids another in a criminal offense can be convicted of that offense as a principal. Ind.Code § 35–41–2–4 (Burns 1985 Repl.). An accomplice is criminally responsible for the probable and natural consequences of the principal's plan. *Proctor v. State* (1979), 272 Ind. 357, 397 N.E.2d 980. The evidence need not show that the accomplice personally participated in the commission of each element. *Harris v. State* (1981), Ind., 425 N.E.2d 154. On the other hand, the law requires a mini-

mum level of involvement before even accessory liability attaches.

A similar claim of minimal involvement was made by the defendant in *Hudak v. State* (1983), Ind.App., 446 N.E.2d 615, in which the Court of Appeals affirmed the defendant's conviction for dealing in a Schedule II controlled substance. In that case, the defendant offered to arrange the drug buy, quoted an approximate price, introduced the officers to the seller, and accepted compensation for his efforts. The court concluded:

> The trier of fact may infer participation from several factors considered together. These included presence, failure to oppose the crime, companionship with the principal, and conduct before, during and after the offense which tends to show complicity. The totality of Hudak's acts make it reasonable for the jury to have inferred his participation in the principal's (seller's) drug sale. Therefore, the evidence is sufficient. (citations omitted.) *Hudak*, 446 N.E.2d at 615.

The facts in this case are substantially similar, and we believe the evidence clearly supports Wallace's convictions as an accessory. Without Wallace, the drug purchases at issue would not have occurred. Wallace differentiates his situation from *Hudak* by alleging that the police or their informant initiated the transactions, that he quoted no prices, that he took no compensation, and that he did not "make the arrangements for the purchase of the controlled substances."

Viewing only the evidence most favorable to the verdict, we cannot agree with Wallace's version of the facts nor with his conclusion that *Hudak* is inapplicable. The police contacted Wallace only after he suggested they call him the next time they sought drugs. Wallace gave an original estimate for the "trees" which was close to the figure paid. He introduced the officers to Mak and accompanied them to the location where Mak obtained the drugs. Mak and Wallace each received two pills as their "commission" on the first excursion and arranged a drug sale of their own during the second exchange. The evidence was sufficient to support both convictions.

■ Wallace also claims the evidence was insufficient to rebut entrapment, although he never explicitly raised that defense. While entrapment is an affirmative defense, it need not be specifically pleaded. *Jackson v. State* (1982), Ind.App., 441 N.E.2d 29. The defendant must only present evidence of police involvement before the burden shifts to the prosecution to prove that the defendant has not been induced or hired by a governmental agency to commit a crime which he had no predisposition to commit. *Id.; Williams v. State* (1980), 274 Ind. 94, 409 N.E.2d 571. A showing of predisposition, therefore, effectively negates the defense of entrapment. Some factors which indicate predisposition are knowledge of drug prices, knowledge of sources of drug suppliers, use and understanding of terminology almost exclusively practiced in the drug market, solicitation of future drug sales, and multiple sales to officers. *Henrichs v. State* (1983), Ind., 455 N.E.2d 599; *Marts v. State* (1982), Ind., 432 N.E.2d 18; *Silva v. State* (1980), Ind.App., 410 N.E.2d 1342. On appeal, this Court will review a claim of entrapment using the standards that apply to other challenges to the sufficiency of the evidence. *Everroad v. State* (1982), Ind., 442 N.E.2d 994.

■ Merely affording the defendant an opportunity to commit a crime does not constitute entrapment. *Drollinger v. State* (1980), 274 Ind. 99, 409 N.E.2d 1084. Even if the State initiates the transaction, entrapment will not exist if the police informant merely provided an opportunity for the defendant to carry out his natural propensity to commit a crime. *Thomas v. State* (1976), 264 Ind. 410, 345 N.E.2d 835.

■ Wallace fed his own dependance though "commissions" from his arrangements of drug deals. Though he was out on bond on other drug charges, he continued to play the role of intermediary between buyer and seller to feed his habit. The evidence establishes that he was famil-

iar with drug parlance and prices, that he solicited future drug sales, that he was involved in multiple sales to the officers, and that he was familiar with several different drug suppliers. The undercover officers merely afforded Wallace the opportunity to fulfill his natural propensity to deal in drugs. Therefore, the jury was entitled to conclude that Wallace was not entrapped into committing these offenses.

## II. Police Sound Recordings

One of the undercover officers was wearing a microphone during the three transactions with Wallace and some conversations with Wallace were recorded. Defense counsel attempted to introduce those tapes during the State's case-in-chief. The State objected, contending a proper foundation had not been established to indicate that the tapes were audible and enlightening. The judge suggested that he would have to listen to the tapes to make that determination, and defense counsel stated that the tapes did not need to be played at that time. The judge said he would reserve his ruling until the tapes were played.

After the State had presented its rebuttal evidence, defense counsel sought to introduce the tape recordings. The State again objected, contending that the proper time for introduction was during the defense's case-in-chief and that the tapes were irrelevant in light of the testimony from the officers and the defendant. The trial judge sustained the objection without further comment. Wallace now claims the trial court's refusal to admit the tapes was prejudicial error requiring reversal. The admission of sound recordings is within the discretion of the trial court, and we reverse only upon an abuse of that discretion. *Lamar v. State* (1972), 258 Ind. 504, 282 N.E.2d 795.

■ We conclude that the trial court did not abuse its discretion in refusing to admit the tapes. First, Wallace failed to establish the requisite foundation. The admission of sound recordings must be preceded by a foundation which shows that:

1. They are authentic and correct;

2. The testimony elicited was freely and voluntarily made, without any kind of duress;

3. All required warnings were given and all necessary acknowledgments and waivers were knowingly and intelligently given;

4. They do not contain matter otherwise not admissible into evidence;

5. They are of such clarity as to be intelligible and enlightening to the jury. *Id.*

An officer identified the tapes but testified that their audio quality was "pretty poor." There was no other testimony during trial to provide a further foundation.

■ Even if the trial court did erroneously refuse admission of the tapes, no prejudicial error could be shown. Wallace claims one tape would have shown his innocence in the August 23rd transaction. However, Wallace admitted he told police that he knew someone who could get some "trees" for them at $3 or $3.50 each. He admitted subsequently introducing the officers to Mak and accompanying them to the purchase site. Wallace also testified that he received two "trees" from Mak for his role in the drug purchase. Inasmuch as Wallace's conduct by his own account was illegal, no tape substantiating his testimony would exonerate him.

Defense counsel suggested the absence of certain conversations on the other tape would corroborate Wallace's claim that his involvement in the drug transactions was induced by police offers of money, drugs, and beer. The officers denied making any inducements and testified that only the drug dealings were recorded. Under these circumstances, the mere absence of the alleged conversations from the tape does not heighten the inference that they in fact occurred. The second tape simply does not lend any more credence to Wallace's claim. Therefore, he has failed to establish prejudicial error from the trial court's refusal to admit the tapes. We conclude the trial court did not abuse its discretion when it refused to admit the recordings.

The judgment of the trial court is affirmed.

GIVAN, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.