**Frankie ROLLER, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 91A02–9112–CR–00574.**

Court of Appeals of Indiana, Second District.

Nov. 5, 1992.

Transfer Denied Dec. 28, 1992.

Eric K. Koselke, Indianapolis, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

SHIELDS, Judge.

Frankie Roller appeals his conviction of dealing in cocaine, a class B felony.[1]

We affirm.

## ISSUES

1. Whether statements made by the prosecutor placed Roller in a position of grave peril and therefore constitute reversible error.

2. Whether the trial court erred in admitting into evidence an audio tape of a conversation between Roller and a police informant.

3. Whether the trial court erred in refusing to admit into evidence two photographs offered by Roller.

4. Whether the trial court erred when it refused to grant Roller a continuance and refused to order the release of a State witness's medical records.

## FACTS

On November 11, 1989, Frankie Roller procured cocaine for a police informant, Tammy Smith. Smith and her vehicle were searched before and after the transaction, and she was wearing a wire, so an audio tape of the conversation between her and Roller was produced. In addition, Police Officer Joseph Raines followed Smith as she picked up Roller, went to Richard Mailloux's house where Roller purchased the cocaine, and then dropped Roller off.

Roller was arrested and charged with dealing in cocaine, a class B felony. Six days prior to Roller's trial, the State notified Roller and the court that it intended to call Richard Mailloux as a witness. Roll-

1. *See* IC 35–58–4–1 (1992 Supp.).

er's counsel sought a continuance the next day on the basis that Mailloux had previously denied selling cocaine to Roller and counsel needed more time to locate witnesses to impeach Mailloux's testimony to the contrary. The trial court denied the continuance.

During voir dire and trial, the prosecutor made several statements regarding his role as a prosecutor and Roller's counsel's role as a defense attorney. Roller's objections to these statements were overruled. During its case-in-chief, the State admitted, over Roller's objection, the audio tape of the drug transaction. The State also called Mailloux, who testified that he sold Roller cocaine on the day in question. Mailloux also testified that he had been diagnosed as paranoid schizophrenic, but refused to release his medical records to Roller. Roller moved that the trial court order the records released so that he could cross-examine Mailloux concerning his competency to testify. The trial court denied the motion.

During his testimony, Roller offered into evidence two photographs which he testified showed the view Officer Raines had of Mailloux's house during the drug transaction. The State objected to these photographs on the basis that they did not accurately depict the area as it was in November, 1989, when the transaction occurred. This objection was sustained; however, Roller was permitted to testify about the photographs and what they depicted.

Roller was convicted by the jury of dealing in cocaine. He appeals.

## DISCUSSION

### I.

■ Roller argues that his conviction should be reversed because of improper comments made by the prosecutor during voir dire, opening statement and closing argument. Prosecutorial misconduct requires reversal only when, under the circumstances, it places the defendant in a position of "grave peril." *Andrews v. State* (1989), Ind., 536 N.E.2d 507, 509.

"The gravity of the peril is determined by considering the probable persuasive effect of the misconduct on the jury's decision, not the degree of impropriety of the conduct." *Id.* (citations omitted). We must therefore examine each statement to determine whether it constitutes prosecutorial misconduct and, if so, whether it placed Roller in "grave peril."

## A.

Roller asserts that the prosecutor gave his personal opinion about Roller's guilt during voir dire when he stated:

> You understand that he's not guilty until the State proves its case. If the State did not prove its case, then you would have a duty—and I have a duty to tell you, that if the State doesn't prove its case, that you should return a verdict of not guilty.

Record at 444–45. In response to Roller's objection, the prosecutor stated, "I think if I don't prove my case, I do have a duty to inform them." *Id.* at 445. Roller's counsel objected to this comment also, and moved for a mistrial.[2] The trial court overruled both objections and denied the motion for mistrial.

Roller asserts these remarks are improper statements by the prosecutor of his personal opinion as to the guilt of a defendant and, further, constitute an effort by the prosecutor "to cultivate or condition [the jury] to be receptive to the cause of the examiner...." Appellant's Brief at 29.

Ind.Professional Conduct Rule 3.4(e), which provides that it is improper for an attorney to "state a personal opinion as to the ... guilt or innocence of an accused," is violated when the prosecutor's comment suggests that he or she has personal or special knowledge, beyond the evidence presented to the jury, which proves that the defendant is guilty. *Wallace v. State* (1990), Ind., 553 N.E.2d 456, 471, *cert. denied,* —— U.S. ——, 111 S.Ct. 2250, 114 L.Ed.2d 491 (1991); *Woods v. State* (1989), Ind., 547 N.E.2d 772, 781, *cert. de-* *nied,* —— U.S. ——, 111 S.Ct. 2911, 115 L.Ed.2d 1074 (1991) (citing *Swope v. State* (1975), 263 Ind. 148, 325 N.E.2d 193, *cert. denied,* 423 U.S. 870, 96 S.Ct. 135, 46 L.Ed.2d 100). Further, it is improper for a party to try his or her case on voir dire. *Robinson v. State* (1973), 260 Ind. 517, 520–21, 297 N.E.2d 409, 411.

Here, however, neither statement suggests in any way that the prosecutor had any special knowledge about Roller's guilt or innocence, nor do the statements constitute an effort by the State to try its case. Rather, the statements are perhaps an inartful attempt to explain the presumption of innocence and the State's burden of proof. Further, the probable persuasive effect of the statements upon the jury's decision is negligible. Thus, the prosecutor's statements during voir dire were not acts of misconduct, nor did they place Roller in grave peril. Hence, the statements do not constitute reversible error.

## B.

During his opening statement, the prosecutor made the following statement: "All I ask is that you listen to the evidence. I wouldn't be before you if I didn't believe the State could prove its case." Record at 621. Roller argues that this statement is an improper expression of the prosecutor's personal opinion of his guilt and requires reversal. Our supreme court discussed a very similar statement made under very similar circumstances in *Merritte v. State* (1982), Ind., 438 N.E.2d 754, 756–57. In *Merritte,* the prosecutor stated "I don't have to be here in court if I don't believe these men are guilty. It's my decision whether to take somebody to trial or not, and I'm here." *Id.* at 756. The supreme court held that this statement was not improper because it was "based on the prosecutor's analysis of the evidence" and "was not intended as, nor could it reasonably be taken to be, an inference the prosecutor had some special knowledge unrevealed to

---

**2.** We note that as voir dire is not part of the trial, the proper motion would have been one to strike or discharge the jury panel or to chal- lenge the array. *Bardonner v. State* (1992), Ind. App., 587 N.E.2d 1353, 1357 n. 4.

the jury that pointed more decisively to appellants' guilt." *Id.* at 757. Here, too, the statement at issue, which followed a discussion of the evidence the State expected to present, was "no more than a statement of [his] conclusions based on the evidence." *See id.* There is no error.

## C.

Roller points to two comments made by the prosecutor during his closing argument and rebuttal that he believes were improper. Roller did not object to these comments at trial, but correctly argues that prosecutorial misconduct sometimes may rise to the level of fundamental error. *See Jester v. State* (1990), Ind., 551 N.E.2d 840, 843; *Bardonner v. State* (1992), Ind.App., 587 N.E.2d 1353, 1358 n. 2, *trans. denied.* However, there is no fundamental error in this case.

■ The first passage which Roller asserts was improper contains a discussion of the different roles of the prosecutor and the defense counsel. The thrust of the discussion is that a prosecutor "must be dedicated to making the criminal trial a procedure for the ascertainment of the true facts surrounding the commission of a crime" while a defense attorney "has no comparable obligation to ascertain or pres-

ent the truth." [3] Record at 1006–07. Roller argues that these statements "placed defense counsel in a position of defending herself and not Roller," and thus denied Roller effective assistance of counsel. Appellant's Brief at 30.

The passage to which Roller objects is an almost verbatim recitation of Justice White's partial dissent in *United States v. Wade* (1967), 388 U.S. 218, 256–57, 87 S.Ct. 1926, 1947, 18 L.Ed.2d 1149. It has been firmly established by our supreme court that it is permissible for a prosecutor to read this passage during closing argument. *See Fox v. State* (1988), Ind., 520 N.E.2d 429, 431; *Abercrombie v. State* (1985), Ind., 478 N.E.2d 1236, 1238–39; *Johnson v. State* (1985), Ind., 475 N.E.2d 17, 19; *Hubbard v. State* (1974), 262 Ind. 176, 182, 313 N.E.2d 346, 350.[4] There is no error.

■ Roller also argues it was fundamental error for the trial court to allow the prosecutor to tell the jury during closing argument that defense counsel was trying to confuse them.[5] The prosecutor's comments here are very similar to the comments made in *Scherer v. State* (1990), Ind., 563 N.E.2d 584, 586, in which the prosecutor told the jury that the defense counsel "is trying to snow you" and "you

---

3. The entire passage reads as follows:

> I told you earlier that there were different roles in this case. Defense counsel has certain roles and I have certain roles. Law enforcement officers have the obligation to convict the guilty and to make sure that they do not convict the innocent. They must be dedicated to making the criminal trial a procedure for the ascertainment of the true facts surrounding the commission of a crime. To this extent, our so called adversary system is not adversary at all. Nor should it be. But defense counsel has no comparable obligation to ascertain or present the truth. Our system assigns a much different mission. He must be as interested in preventing the conviction of the innocent, but as in a voluntary plea of guilty, we also insist that he defend the client whether he is innocent or guilty. The State has the obligation to present the evidence. Defense counsel need not present any—need present nothing, even if he knows what the truth is. I don't think there's any question, Ladies and Gentlemen, that the State has proven its case. I think everyone here knows what the truth is.

Record at 1006–08.

4. Roller's reliance on *Bardonner,* 587 N.E.2d 1353, is misplaced. In *Bardonner,* the court of appeals held that reading the passage in question during voir dire was improper, distinguishing the *Hubbard* line of cases because they all involved closing arguments. Obviously, *Bardonner* cannot be applied in this case, which also involves a closing argument.

5. The prosecutor stated:

> Before becoming a Deputy Prosecutor, I was a defense attorney, and I remember before my first case, my dad said—I said "well how do you do this," and he said, "well, if the facts are in your favor, you try the facts, and if the law is in your favor, you try the law, and if all else fails, try to confuse them." It made perfect sense to me. I think that's what makes perfect sense here. The facts aren't in her favor ... the law is clearly not in their favor.... So what else does Ms. Briggs have? Try to confuse you. I think she's made every effort to do that.

Record at 1068–69.

are snowed under and you have to try to dig yourself out." The court in *Scherer* held that "the evidence against appellant is so overwhelming it is unrealistic to believe that the simple statements by the prosecutor repeatedly referring to a 'snow job' could have tipped the scales in the jury's mind regarding appellant's guilt." *Id.* at 587. Here, too, we believe that, given the substantial evidence against Roller, this isolated comment by the prosecutor was not a determining factor in the jury's verdict. The prosecutor's statements did not deprive Roller of a fair trial, and therefore do not constitute fundamental error.

## II.

Roller argues the trial court erred in admitting an audio tape of the transaction between him and Tammy Smith, the police informant, which was obtained by means of a wire worn by Smith. Roller objected to the use of the tape at trial because of its poor quality.

The trial court has wide discretion when determining whether an audio tape is of sufficient quality to be admitted. *Sharp v. State* (1989), Ind., 534 N.E.2d 708, 712, *cert. denied*, 494 U.S. 1031, 110 S.Ct. 1481, 108 L.Ed.2d 617 (1990). However, our supreme court has held that this is an issue where we, as a reviewing court, "are in a position superior to that of the trial judge to decide an issue, the determination of which is entirely discretionary." *Lamar v. State* (1972), 258 Ind. 504, 512, 282 N.E.2d 795, 800; *see also Pettit v. State* (1979), 272 Ind. 143, 147, 396 N.E.2d 126, 129; *Bates v. State* (1988), Ind.App., 520 N.E.2d 129, 132–33, *trans. denied.* Therefore, "justice demands that we substitute our judgment, if different from that of the trial judge." *Lamar*, 258 Ind. at 512, 282 N.E.2d at 800.[6]

■ When a recording is made in a non-custodial setting,[7] as in this case, it should be admitted only if it is "of such clarity as to be intelligible and enlightening to the jury." *McCollum v. State* (1991), Ind., 582 N.E.2d 804, 811–12. It is not necessary that every word be intelligible, *Hestand v. State* (1982), Ind., 440 N.E.2d 1121, 1122; instead, we must look at the tape as a whole to determine whether it would lead the jury to speculation as to its contents. *Id.; Sharp*, 534 N.E.2d at 712.

■ We have listened to the tape involved in this case and have determined

---

**6.** The supreme court has, since *Lamar* and *Pettit*, stated that the trial court's decision whether to admit a sound recording is reviewable for abuse of discretion, *see Wallace v. State* (1986), Ind., 498 N.E.2d 961, 965, citing *Lamar* for this proposition. However, the court in *Lamar* specifically disclaimed the abuse of discretion standard, stating that:

> Ordinarily, we would leave such matters to the sound discretion of the trial judge and reverse only for abuse of such discretion ... [however, here we will substitute our own judgment as a reviewing court and] we see no necessity to allude to an imaginary abuse by the trial judge, when in reality it is merely a good faith difference of opinion upon an issue viewed from altogether different perspectives.

*Lamar*, 258 Ind. at 512, 282 N.E.2d at 800.

**7.** The term "non-custodial" is used here to distinguish situations in which a tape is made within the comforts of an interrogation room, in which optimal recording equipment and conditions are possible, and tapes made under other circumstances, such as when a wire or "bug" is used. *Compare Lamar*, 258 Ind. at 512, 282 N.E.2d at 800 ("The development of electronic sound recording equipment has attained such a level of perfection with regard to simplicity of operation, fidelity and economy as to render its use highly desirable and its misuse inexcusable. No interrogation room should be without adequate sound reproduction equipment and a competent operator...."), *with Fassoth v. State* (1988), Ind., 525 N.E.2d 318, 324, in which the court stated:

> Appellants' case is distinguishable from *Lamar*. The tape played at appellants' trial did contain sounds of static and interference. However, the portion played to the jury was sufficiently audible to understand that they were in the midst of a drug sale. Further, the standard of quality expected of a recording in an interrogation room cannot be used to judge a recording of a person wearing a "bug." Because of clothing worn over the microphone and Fassoth's moving about in and out of the car, interference and static on the tape were inevitable.

While the court in *Fassoth* did not delineate a standard to be used in place of the *Lamar* standard in wire cases, it has applied the *Lamar* standard to a tape-recorded telephone conversation. *See McCollum v. State* (1991), Ind., 582 N.E.2d 804, 811–12, (a sound recording may not be admitted unless it is "of such clarity as to be intelligible and enlightening to the jury.").

that it is of such poor quality that, by any standard, it was error to admit it. While some of Smith's words are intelligible some of the time, Roller's portion of the conversation is almost completely blocked by static, with only a few of his words being distinguishable, even after several listenings. Perhaps the court reporter described it best with her notation in the record, "Unable to hear well enough to transcribe—static." Record at 722. Thus, the subject tape falls into the category of an inadmissible tape, *see Hestand*, 440 N.E.2d at 1121 (court was "able to comprehend the substance of the conversation only by listening extremely carefully and by replaying portions of it"); *Pettit*, 396 N.E.2d at 130 (tape was "of very poor audio quality due, at least in part, to large amounts of static and background noise"), rather than the category of tape which has been held properly admitted, *see Sharp*, 534 N.E.2d at 712 (tapes contain "occasional static" but "voices and conversations were sufficiently clear"); *Fassoth*, 525 N.E.2d at 324 (tape contained static and interference but "the portion played to the jury was sufficiently audible to understand that they were in the midst of a drug sale"). It was error to admit the tape.

█ However, we agree with the State's assertion that the error is harmless. The harm caused by admitting an unintelligible tape is that the jury will be forced to speculate as to the contents of the tape, and will most likely assume that the tape contains what the State says it does. *See Hobson v. State* (1984), Ind., 471 N.E.2d 281, 286 (explaining that in *Lamar*, "it was impossible to determine whether the appellant was or was not confessing [on the tape], and we held that the jury would be inclined to believe that the appellant was confessing, else the State would not have sought the admission of the tape into evidence"). Thus, had Smith's testimony been

uncorroborated, admitting the tape would have been reversible error because of the very real risk that the jury would have assumed that the tape corroborated her testimony and convicted Roller on that basis alone. Here, however, the jury heard a substantial amount of other evidence that corroborated Smith's testimony. Police Officer Raines testified that before the buy he searched Smith's car and his wife, Teresa, searched Smith, and no drugs were found. He then placed a wire on Smith and gave her fifty dollars for the buy. He followed Smith in his unmarked car and saw Roller leave Smith's car, go inside Richard Mailloux's house, and return to Smith's car. After Smith dropped Roller off, Smith gave Raines a small bag of cocaine, and Raines and Teresa repeated their searches of Smith and her car and found no other drugs. Teresa confirmed the details of her search of Smith. Under these circumstances, the erroneously admitted tape did not place Roller in grave peril, as any speculation by the jury as to the tape's contents would not have added anything to the other evidence available to them. *See Pettit*, 272 Ind. at 148, 396 N.E.2d at 130.[8]

### III.

During his testimony, Roller offered into evidence two photographs which he contends represent the view of Mailloux's door that Officer Raines had from his car during the buy. Officer Raines testified that he could see the door to Mailloux's house clearly when Roller entered the house. Roller alleges that the pictures he sought to admit demonstrate that Raines's view of Mailloux's door was obstructed by a large pine tree. The State objected to the pictures being admitted into evidence on the ground that they were taken in July, 1991, and did not accurately portray the scene as it existed in November, 1989. Roller argues it was an abuse of discretion for the

8. Several cases have held that tapes were sufficiently clear to be admitted, but noted further that, even if it had been error to admit them, the tapes were only cumulative since there was other testimony about the transaction in question. *See Fassoth*, 525 N.E.2d at 324; *Ascherman v. State* (1991), Ind.App., 575 N.E.2d 277, 279.

However, it is difficult to understand how an unintelligible tape can be cumulative of anything unless you first assume its content. Thus, an unintelligible tape carries a great risk of being the means by which the State bolsters an incredible witness enough to sway the jury in its favor.

court to sustain this objection and refuse to admit the photographs.

A trial court has sound discretion to decide whether to admit photographs into evidence, and we will reverse its decision only if that discretion has been abused. *Williams v. State* (1990), Ind., 555 N.E.2d 133, 138. Here, other than the leaves on the trees behind Mailloux's house, the pictures depicted "basically how the area of [Mailloux's] house looked in '89." Record at 920. However, assuming the photographs should have been admitted, their exclusion is harmless error; the photographs are taken from such a distance that Roller's description of what the photographs depict is much more graphic and helpful to the jury than the photographs would have been. Thus, Roller's testimony which described at length the scenes depicted in the photographs and the reason why, in his opinion, Officer Raines would have been unable to see someone enter the Mailloux house, cures any error in the exclusion of the photographs themselves. Roller has failed to demonstrate prejudice; there is no reversible error.

### IV.

Roller argues the court abused its discretion when it denied his motion for continuance, which was prompted by the State's decision to call Richard Mailloux as a witness six days before trial. Mailloux had been listed as a potential defense witness previously, but Roller had not intended to call him. Roller claimed that Mailloux's testimony that he sold Roller cocaine would "be a complete surprise to the defense" since it was a "complete and drastic change from his prior indications and information available to the defense," Record at 38, and requested a continuance to locate witnesses who could impeach Mailloux's testimony.

Roller acknowledges the ruling on a motion for a continuance rests within the sound discretion of the trial court, and that it is a ruling that will be reversed only upon a showing of clear error which requires a showing of prejudice to the defendant. That is exactly the burden Roller

fails to meet. Roller based his need for a continuance on the necessity to obtain witnesses to impeach Mailloux; however, at the time he requested the continuance, he had six days to ascertain the availability of impeaching evidence. The trial court did not abuse its discretion in determining that, without more information as to any impediments, six days was sufficient time to prepare for Mailloux's cross-examination.

Roller also argues his ability to cross-examine Mailloux concerning his competency as a witness was impermissibly limited by the court's refusal to order Mailloux's medical records released. Insofar as Roller's argument relates to Mailloux's competency as a witness, Roller is unable to show he was prejudiced by the trial court's ruling. Competency is an issue that must be resolved prior to the witness testifying; therefore, cross-examination for the purpose of establishing incompetency would have been too late. *Binder v. State* (1966), 248 Ind. 30, 221 N.E.2d 886; *Dowdell v. State* (1981), Ind.App., 429 N.E.2d 1. The trial court recognized this when it told Roller the court would allow Roller to subpoena Mailloux's physician and interrogate him on the question of Mailloux's competency, an opportunity which Roller did not use. Insofar as Roller's argument relates to Mailloux's credibility, Mailloux testified at trial that he had been diagnosed as paranoid schizophrenic, and described his symptoms and his medication. Thus, the jury was well-advised of Mailloux's circumstances. Finally, as revealed in Part II, *supra*, Mailloux's testimony that he sold cocaine to Roller was merely cumulative of the otherwise overwhelming evidence the State presented of Roller's guilt.

Judgment affirmed.

BUCHANAN and HOFFMAN, JJ., concur.