Doyle Otto WILHELM, (Defendant-Appellant Below),

v.

STATE of Indiana, (Plaintiff-Appellee Below).

No. 3–882A212.

Court of Appeals of Indiana, Third District.

March 23, 1983.

K. Richard Payne, Fort Wayne, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

STATON, Judge.

Doyle O. Wilhelm (Wilhelm) was convicted of delivery of a Schedule II controlled substance, a Class B felony,[1] for selling ten methaqualone tablets to an undercover police officer. On appeal, Wilhelm raises two issues:[2]

(1) Whether testimony that he handed the police officer the drugs and the police officer handed him the agreed price is sufficient to support his conviction; and

(2) Whether evidence of the circumstances surrounding that transaction and a previous transaction is sufficient to overcome a defense of entrapment by showing that Wilhelm was predisposed to deliver drugs.

We affirm.

The record shows that Sergeant George Colby (Colby), an Allen County police officer met with Tonya Wittekind (Wittekind), and decided, after talking with her, to use her as an informant in his work as an undercover narcotics officer. On December 3, 1980, Colby recorded a telephone conversation between Wilhelm and Wittekind during which Wittekind told Wilhelm that the "guy that wanted those two G's" was available. Wilhelm set a price of $100.00 per G (gram), and they arranged to meet that night; Colby was to bring a scale. That evening, Colby and Wittekind went to Wilhelm's house trailer in Allen County, Indiana. After being introduced to Colby, Wilhelm produced a plastic bag containing a white powder which he said was cocaine. Colby weighed out two grams of the powder and paid Wilhelm two hundred dollars. Detective Hamilton, another Allen County police officer, observed the transaction from outside, through the kitchen window. At Wilhelm's request, Colby weighed three bags of white powder and returned them to Wilhelm. The total weight, including the two grams Colby purchased, was approximately eighty grams. At this meeting, Colby and Wilhelm discussed the purchase of an ounce of cocaine for $1,500.00 and a pound for $15,000.00. Wilhelm gave Colby his telephone number so that Colby could call him the next day about the deal because Wilhelm had to discuss the delivery with his supplier.

The next day, laboratory tests on the substance Colby purchased showed that it was lidocaine, not cocaine, so Colby called Wilhelm to complain. Wilhelm told Colby that the deal for the ounce was set. When Colby complained about his previous purchase and asked if that was all Wilhelm had, Wilhelm offered him qualudes (methaqualone) at $250.00 a hundred or $3.00 each for ten or $3.50 each for less than ten. They arranged a meeting.

When Colby and Hamilton went to Wilhelm's trailer at five o-clock that afternoon, Hamilton again waited outside and observed the transaction through the kitchen window. Wilhelm gave Colby ten qualudes and Colby paid him $30.00. Wilhelm told Colby that the tablets were fresh and that he could get one hundred of them for Colby from his people the next day. He also told Colby that he had sold thousands of the tablets within a week and said that the price to Colby would be $250.00 per hundred but Colby could sell them on the street for $3.50 or $4.00 each. Laboratory tests showed that each tablet contained 7.44 grams of methaqualone, a Schedule II controlled substance.

Wilhelm contends that the lidocaine belonged to Tonya Wittekind, and he was holding it for her. Wittekind told Colby that Wilhelm got his drugs from Bob Clause and "Jeno."

I.

Sufficiency

When reviewing the sufficiency of the evidence, this Court will neither weigh the

---

1. IC 1976, 35–48–4–2(1) (Burns Code Ed., Supp.1982).

2. The issues have been rephrased.

evidence nor judge the credibility of witnesses. We will consider the evidence most favorable to the State and all the reasonable inferences which may be drawn from that evidence. If there is substantial evidence of probative value on each element of the crime, we will not disturb the judgment. *Smith v. State* (1982), Ind., 429 N.E.2d 956, 957.

Wilhelm was convicted of violating IC 1976, 35–48–4–2 (Burns Code Ed., Supp. 1982), which provides, in pertinent part:

"A person who:

"(1) Knowingly or intentionally manufactures or delivers a controlled substance, pure or adulterated, classified in schedule I, II, or III, except marijuana, hash oil, or hashish; . . . commits dealing in a schedule I, II, or III controlled substance, a class B felony. . . ."

He contends that, because he was holding the drugs for Tonya Wittekind, he was not the actual deliverer of a controlled substance.

According to IC 1976, 35–48–1–1 (Burns Code Ed., Supp.1982),

" 'Delivery' means an actual or constructive transfer from one person to another of a controlled substance, whether or not there is an agency relationship."

Colby testified that Wilhelm gave him ten methaqualone tablets and he gave Wilhelm $30.00. Hamilton testified that he saw Wilhelm hand Colby something and Colby hand Wilhelm money. Regardless of the ownership of the qualudes, Wilhelm actually transferred them to Colby. This is sufficient to support his conviction.[3]

## II.

### Entrapment

Wilhelm contends that he was entrapped into making the drug sale to Colby. Indiana law provides:

"(a) It is a defense that:

"(1) The prohibited conduct of the person was the product of a law-enforcement officer, or his agent, using persuasion or other means likely to cause the person to engage in the conduct; and

"(2) The person was not predisposed to commit the offense.

"(b) Conduct merely affording a person an opportunity to commit the offense does not constitute entrapment."

IC 1976, 35–41–3–9 (Burns Code Ed., 1979 Repl.). The participation of Colby in the sale raises the entrapment issue. *See Voirol v. State* (1980), Ind.App., 412 N.E.2d 861, 863 (*trans. denied*).

"When the defense of entrapment has been raised, the State has the burden of proving beyond a reasonable doubt that the defendant's conduct was not a product of the efforts of a law enforcement officer *or* that the accused was predisposed to engage in the conduct . . . Thus, the issue is whether there was substantial evidence of probative value to support the conclusion that the appellant had a predisposition to commit the crime." (Emphasis original; citations omitted.)

*Ryan v. State* (1982), Ind., 431 N.E.2d 115, 117.

A number of circumstances may be considered on the issue of predisposition in a drug case. These include: familiarity with drug terminology; possession of a quantity of contraband; knowledge of prices and quantities of a controlled substance; familiarity with a source of supply; multiple sales to an officer; and willingness to make future sales. *Stewart v. State* (1979), Ind., 390 N.E.2d 1018, 1021; *Sowers v. State* (1981), Ind.App., 416 N.E.2d 466, 469 (citations omitted). In this case, Wilhelm demonstrated a familiarity with drug terminology such as "ludes" (methaqualone), "G" (gram), "OZ" (ounce), "LB" (pound), and "stepped on" (mixed with an impurity). When Colby bought two grams of lidocaine, Wilhelm had over eighty grams

---

**3.** Furthermore, there was evidence that Wilhelm received drugs from Bob Clause and "Jeno." Wilhelm's estranged wife testified that the money Colby paid for the lidocaine may have been used to pay their household bills. Such conflicts in evidence are to be resolved by the trier of fact.

in his possession. Wilhelm was familiar with prices for various quantities of methaqualone and with its price on the street. He spoke of getting drugs from "the people" and made two sales to Colby. He made representations as to the quality of the methaqualone and that he had sold large amounts in the past; he promised to have a hundred tablets for Colby the next day. These facts are sufficient for the trier of fact to have determined that Wilhelm was predisposed to commit the offense.

Affirmed.

HOFFMAN, P.J., and GARRARD, J., concur.