## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 31 2017, 11:07 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Rory Gallagher
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Robert Reed,<br>*Appellant-Defendant*,<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff*. | October 31, 2017<br><br>Court of Appeals Case No.<br>49A02-1704-CR-815<br><br>Appeal from the Marion Superior<br>Court<br><br>The Honorable Ronnie Huerta,<br>Commissioner<br><br>Trial Court Cause No.<br>49G24-1602-CM-4493 |

**Brown, Judge.**

[1] Robert Reed appeals his conviction for theft as a class A misdemeanor. Reed raises one issue which we revise and restate as whether the trial court abused its discretion or denied him an opportunity to present closing argument in limiting his defense counsel's final argument. We affirm.

## Facts and Procedural History

[2] On January 2, 2016, Reed drove Mary Kersey and her mother to Walmart in his pickup truck. Reed, Kersey, and her mother entered the store together, and none of them had any bags with them. After entering the store, Kersey separated from her mother and Reed, turned around and exited the store, and returned back inside with an empty cart. Kersey grabbed empty shopping bags from an idle register, went to the women's apparel section of the store, and placed items of clothing in the bags. Kersey then went to the customer service desk to complete a return transaction, and the store associate obtained a price total of the items taken out of the bags. Kersey then returned to the apparel section of the store. The store associate, consistent with Walmart's policy, notified the loss prevention office that a return over a certain dollar limit was occurring, and Angelica Bennett began to monitor the individuals by camera using the video security system.

[3] In the apparel section of the store, Kersey met with Reed, who was seated in a marked cart, which is a motorized riding cart or scooter, and Reed helped Kersey pick out items and place them in Kersey's shopping cart. Kersey and Reed went to the customer service desk area and Kersey placed the items in the

cart on the service desk counter to exchange them for the items she had previously delivered for a return transaction. Reed handed the store associate his identification, the store associate had Reed sign a receipt which reflected the return and exchange, and the associate gave Kersey a gift card.[1] The receipt indicated "refund slip" and "no receipt," that the "net refund items" equaled $126.08, that the "net exch/sale items" equaled $105.89, and that the "gift card" amount was $22.70.[2] State's Exhibit 4.

[4] Kersey, Reed, and Kersey's mother began to exit the store with the merchandise when they were stopped by Bennett, who explained that she stopped them for theft and asked them to come to the loss prevention office, and they initially began to go toward the office. However, Kersey and her mother then walked out of the store, Kersey came back and told Reed to leave, and Reed dismounted the marked cart and walked "pretty fast" towards the truck. Transcript Volume II at 56. Reed entered the driver's side of the truck, Kersey's mother entered the passenger side of the truck, Kersey stood on the back of the truck blocking the license plate, and Reed drove toward the exit of the parking lot. Reed briefly stopped so that Kersey could enter the back of the truck and then drove away.

---

[1] Bennett testified that, according to Walmart policy, if a person requests a return of items without a receipt, the store associate must ask for the person's identification and that the person will receive a gift card. She further testified that, if a person exchanges items for which the person does not have a receipt for other items and there is a difference in the amounts exchanged, the person will receive the amount of the difference on a shopping card or a Walmart gift card.

[2] The amount of the gift card included a subtotal of $20.19 plus tax of seven percent.

On February 5, 2016, the State charged Reed with theft as a class A misdemeanor. At his trial, the jury heard testimony from Bennett, Kersey, and Reed and the court admitted into evidence the store receipt for the return and exchange and surveillance video recordings from inside and outside the store. The court and counsel discussed jury instructions outside the presence of the jury, and the prosecutor proposed that three instructions related to accomplice liability be given to the jury.

One of the State's proposed instructions provides:

> Our Supreme Court has identified four factors that can be considered by the fact-finder in determining whether a defendant aided another in the commission of a crime: (1) presence at the scene of the crime; (2) companionship with another engaged in a crime; (3) failure to oppose the commission of the crime; and (4) the course of conduct before, during and after the occurrence of the crime.

Appellant's Appendix Volume II at 72.[3] With respect to this instruction, Reed's counsel stated "[w]e believe that it is . . . misleading and the cases that they are

---

[3] The State indicated that the source of the proposed instruction was *Schaaf v. State*, 54 N.E.3d 1041 (Ind. Ct. App. 2016). Ind. Code § 35-41-2-4 provides in part that a person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense. In *Schaaf*, this Court observed that the Indiana Supreme Court "has identified four factors that can be considered by the fact-finder in determining whether a defendant aided another in the commission of a crime," namely, "(1) presence at the scene of the crime; (2) companionship with another engaged in a crime; (3) failure to oppose the commission of the crime; and (4) the course of conduct before, during, and after the occurrence of the crime." 54 N.E.3d at 1043 (citing *Wieland v. State*, 736 N.E.2d 1198, 1202 (Ind. 2000)). In relevant part, *Schaaf* involved the defendant's role in a controlled buy in which he drove a companion to a gas station where a confidential informant entered the defendant's truck and, while the defendant looked on, gave the companion money in exchange for heroin. *Id.* at 1042. In addressing whether the evidence was sufficient to support the defendant's conviction related to that transaction and in response to his assertion the State failed to prove he was anything more than a bystander, this Court found that the four factors weighed heavily in favor of the

based on are different from this case," "they're different and they're inapplicable," "the third factor assumes . . . assumes knowledge of the defendant" and "that he knew that there was a commission of a crime taking place," "but the cases that it was based on people knew the commission was occurring." Supplemental Transcript Volume II at 8-9. His counsel also explained the facts of *Schaaf* to the trial court. The prosecutor responded that the State was not attempting to address the facts of *Schaaf*, that the jury would not know the facts of that case, and that it wished to discuss only the factors.

The trial court indicated it would not give the proposed instruction and said it would give a final instruction stating: "A person who knowingly or intentionally aids another person to commit an offense commits that offense." *Id.* at 16.

[7] During the State's closing argument, the prosecutor stated "[t]he Supreme Court has also identified several factors that can be used to determine whether the defendant . . . aided in the commission of a crime. Present at the scene of the crime, companionship of another engaged in the crime," and at that point Reed's counsel asked to approach the bench. Transcript Volume II at 164. At

---

defendant's guilt, that it was undisputed the defendant was present at the scene, that he and his companion spent significant time together, that the defendant failed to oppose the crime, and that the defendant's conduct before and during the crime included suggesting the meeting happen at a particular gas station, taking his companion to the gas station, and sitting calmly while his companion and the informant completed the exchange. *Id.* at 1043-1044. We noted that, while the defendant did not actively participate in the actual exchange, he brought the two participants together and provided them with a place to conduct their business. *Id.* at 1044.

sidebar, Reed's counsel noted that the State was going through the factors. The prosecutor argued that the State was allowed to explain the law as part of closing argument. Reed's counsel stated that the reason for the objection was because those particular factors are misleading, "[t]hey were used in that Supreme Court case and those were particular facts," and that "there are a lot of different factors that come into play about whether someone aided another, these are not the only ones." Supplemental Transcript Volume II at 21. The court stated it would "allow the State to give that explanation" and that it would allow defense counsel "to say, 'hey those are . . . not exclusively (inaudible) thinks that it should be look at. Each case is different." *Id.* at 22. Defense counsel asked "[c]an we explain that the other case is about the . . . ," the court replied "[s]ure" and "[i]f you want to explain that -- if you want to explain the differences and I'll -- that's fine, I'm okay with that." *Id.* at 22-23.

[8]     The prosecutor then continued to present the State's closing argument:

> Getting back on track, the Supreme Court handed out, um, identified several factors that can be considered to determine whether a defendant has committed -- has aided in the commission of a crime. These factors are present at the scene of the crime, companionship of another engaged in the crime, failure to oppose the commission of the crime, or also course of conduct before, during and after the occurrence of the crime. Here we have all of these. The defendant did all of these. He was at -- he was at Walmart, he was there with [Kersey], he was dating [Kersey], he did everything with [Kersey], he was with her at the beginning and at the end during the time that they were in Walmart and he was with her when they were picking out clothes to exchange. He never opposed the commission of the

crime.  The course of conduct before, during and after the
occurrence of the crime.  I think we've kind of already hit on this.
He was with her before she went to Walmart, when she got to
Walmart, while they were in Walmart and then when they left
Walmart.  And then he also drove her away.

Transcript Volume II at 164-165.

[9]  In closing, Reed's defense counsel argued:

You saw . . . earlier in closing State presented four (4) factors to
consider to decide if somebody was an accomplice.  I think it's
important for you to have that in context.  So the case that
created that caselaw was very different than this one.  And, and, I
fear to wrongly paraphrase something, I'm just gonna read it for
you it for your right out of the case.  In this case, so the case is
called *Shaft vs. State* [sic].

*Id.* at 172.  The trial court then asked the attorneys to approach the bench.  The
court stated:

Alright, this is what I'm gonna do.  Make no more mention of
that *Shaft* [sic], I'm gonna give an instruction on my own for
them to disregard those factors because at the end of the day I
think it will cause more confusion to the jury.  Um, we've
already given them the instructions that I want them to have.
After that, they are the ultimate fact finders and judges of the
law.  So, I'm gonna instruct them right now not to consider any
of those four (4) factors for that case.

*Id.* at 173.  The prosecutor asked "[s]o you're gonna -- even though that's the
law," and the court replied "[y]eah, because I think it's fact specific and it's a

roundabout way of the State putting out an instruction that I already said that I wasn't gonna allow. So, yes, I am gonna do that, exactly." *Id.*

[10]   The trial court stated the following to the jury:

> Alright, ladies and gentlemen of the jury. We've come to an issue that I need to resolve and I'm gonna resolve it for everyone right now. Uh, earlier when you were watching the presentation by the State of Indiana they mention five (5) factors from another case law, and just now defense was getting ready to mention that case law once again. . . . Uh, I believe that's gonna cause some confusion for you. You've already been given instructions and you're gonna be given further instructions and those are the instructions that you are ordered to follow. Uh, there are many things on your own you'll be able to decide back there. Ultimately, you guys are the finders of fact and the law, both. Follow the instructions that you[] . . . are given and you will be given and follow those instruction only. Uh, what the State mentioned earlier about that *Shaft* [sic] case and the factors that could be taken into account, uh, you're not to consider those. I know you've already heard them, uh, let's be realistic, they'll be possibly in your mind, you may have written them down, I don't know, uh, don't consider those, you follow the instructions that I give you and those instructions only, and ultimately, like I said, you guys are the finders of fact and the law, both, so if you just, you know, you'll decide on your own what you need to do with that. Alright? So we're not gonna have any more mention about factors to look at. Uh, look at your instructions, follows again [sic], read . . . the preliminary instructions as well as the final instructions. Again, you'll have all of that, you'll have any evidence that was submitted, you can take that back with you, review all that when you come to your conclusion. The -- what the attorneys say, they're allowed to characterize the evidence, obviously they're trying to sway you to one decision or another, uh, and that's all they're doing. Uh, the law is what I give you

and what you decide the law is. Okay? I hope that helps. Thank you.

*Id.* at 174-176.

[11] After resuming closing argument, Reed's counsel argued that Kersey was the person who committed the theft, "the fact is he was a sucker, he was foolish that day," Kersey was charming but to her credit admitted to the theft, with all the cameras there was not a video recording of Reed "picking out the stuff, the original stuff, the stolen stuff, not a single one," "why did he give his I.D. to her if he knew she stole it," Kersey entered the store wearing a hoodie that covered her hair and was "all undercover, she knows what she's gonna do," "those two suckers are strolling around buying groceries," and "him running, he got scared, he didn't want to be the sucker." *Id.* at 178-181. The trial court read its final instructions to the jury. The jury found Reed guilty of theft as a class A misdemeanor.

## *Discussion*

[12] The issue is whether the trial court abused its discretion or denied Reed the opportunity to present a closing argument when it limited his defense counsel in discussing *Schaaf*. Reed contends that the court deprived him of due process, and that the only genuine issue was whether he was aware that Kersey was stealing at the time he provided assistance by using his driver's license and signing the receipt to complete the fraudulent exchange. He also contends that "[t]he court's admonishment that the jurors not consider the *Schaaf* factors was

not an adequate substitute for a full-throated argument by Defense Counsel," that the prosecutor listed the factors and explained one-by-one how they weighed in favor of a guilty verdict, and that, "[e]ven if the jurors had been able to ignore that these factors are rooted in case law, they could still be swayed by the persuasive force of the State's argument." Appellant's Brief at 11-12. Reed also argues that the denial of the right to be heard by counsel is a structural error and is not subject to harmless error review, and that, even if it was not a structural error, the State cannot prove the error was harmless beyond a reasonable doubt.

[13] The State contends that Reed's argument is waived because the court admonished the jury to disregard any discussion of the four factors related to accomplice liability and that Reed did not allege the admonishment was somehow inadequate or move for a mistrial. It states that Reed's counsel attempted to read the facts of a case of which the jury had no knowledge and tried to distinguish the factors in that way and that such an act would have certainly caused confusion for the jury. It also argues that, even with the court's instruction to not mention the four factors again, defense counsel was free to argue that Reed did not aid Kersey in the commission of the crime and in fact did argue such considerations without referencing the factors. It also maintains that any error in disallowing Reed from discussing the facts of another case was harmless beyond a reasonable doubt due to the strength of the evidence that he participated in the theft.

[14] We observe that the trial court thoroughly admonished the jury that it should not consider *Schaaf* or the factors discussed by the prosecutor and that it should follow the court's preliminary and final instructions. Reed did not argue or request a mistrial on the grounds that the trial court's admonishment failed to cure any error in disallowing his counsel from discussing *Schaaf* or the factors set forth in that case, and he has waived his claim. *See Cooper v. State,* 854 N.E.2d 831, 835 (Ind. 2006) (stating that the correct procedure is to request the trial court to admonish the jury, that if the party is not satisfied with the admonishment then he or she should move for mistrial, and that failure to request an admonishment or to move for mistrial results in waiver); *Cherry v. State*, 971 N.E.2d 726, 733 (Ind. Ct. App. 2012) (observing that, where the trial court adequately admonishes a jury, an admonishment is presumed to cure any error that may have occurred) (citations omitted), *trans. denied*.

[15] Waiver notwithstanding, Reed still cannot prevail. The opportunity to make a closing argument is a basic element of the criminal process. *Nickels v. State*, 81 N.E.3d 1092, 1094 (Ind. Ct. App. 2017). "Control of final argument is assigned to the discretion of the trial judge." *Rouster v. State*, 600 N.E.2d 1342, 1347 (Ind. 1992). "Unless there is an abuse of this discretion clearly prejudicial to the rights of the accused, the ruling of the trial court will not be disturbed." *Id.* We will not find an abuse of discretion unless the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Emerson v. State*, 952 N.E.2d 832, 840 (Ind. Ct. App. 2011), *trans. denied*. Whether to allow a defendant's attorney to read from appellate court decisions as part of closing

argument is within a trial court's discretion. *See Schlabach v. State*, 459 N.E.2d 740, 742-743 (Ind. Ct. App. 1984) (citing *Lax v. State*, 414 N.E.2d 555, 557 (Ind. 1981) (noting that reading from cases and other legal authorities does not equate with arguing the law; that, while the reading of law to a jury is permissible, a trial court need not allow it in all instances; and that it is a matter of sound discretion which will not be overturned absent manifest abuse)).

[16] The record reveals that in closing argument Reed's counsel told the jury that the defense thought it was important for the jury to have the factors in context, that the case that created that case law was very different from this case, and that it was going to read directly from the *Schaaf* opinion. The court did not allow defense counsel to read from the opinion and informed the jury that it believed the case would cause some confusion. The court admonished the jury not to consider the factors discussed by the prosecutor and to follow the court's preliminary and final instructions, and it instructed the jury on accomplice liability. Further, other than limiting discussion of the *Schaaf* case, the trial court did not limit or prohibit defense counsel from presenting a closing argument or from arguing that Reed was not an accomplice to the theft, in fact his counsel did argue to the jury, at some length, that Reed was not an accomplice to the theft. His counsel argued that Kersey was the person who committed the theft, that Reed "was a sucker," that he would not have provided his identification if he had known Kersey was committing theft, and that, unlike Kersey, he did not attempt to hide his appearance which indicated he did not know the crime was being committed.

[17] Reed has not established that he was prejudiced by the trial court limiting the scope of his counsel's closing argument. We cannot say that the trial court abused its discretion in finding that discussion of the *Schaaf* facts or factors could cause confusion and in limiting the scope of closing argument accordingly. *See Schlabach*, 459 N.E.2d at 743 (noting that the State objected to reading from case law on the basis that it would be used to demonstrate what circumstances constituted "predisposition" under the entrapment statute, holding that this is a matter best left to final instructions and that it "would be easy to mislead a jury on a subject as complex as entrapment through select recitation of facts and holdings of case law," and concluding that the trial court did not abuse its discretion in disallowing the reading of case law); *see also Rouster*, 600 N.E.2d at 1347 (holding that the ruling of the trial court will not be disturbed unless there is an abuse of discretion that is clearly prejudicial to the rights of the defendant); *Walls v. State*, 993 N.E.2d 262, 269 (Ind. Ct. App. 2013) (affirming the trial court's ruling which disallowed the defendant to address the levels of the charged offenses in his closing argument where the defendant failed to show that he was prejudiced by the alleged error), *trans. denied*.

[18] In addition, "any abuse of discretion in restricting the scope of closing argument is subject to harmless error analysis." *Nelson v. State*, 792 N.E.2d 588, 592 (Ind. Ct. App. 2003), *trans. denied*. Reed was not prejudiced by the fact his counsel was not allowed to discuss *Schaaf* because he was still able to present his defense to the jury. His counsel was able to, and did, thoroughly question

each of the witnesses about the theft and Reed's actions. In closing argument, his counsel presented a careful argument that Reed did not know that Kersey was stealing and was not an accomplice to the theft. Defense counsel's closing argument was not unduly restricted by not being permitted to read from or discuss the factors in *Schaaf*. Even if the trial court abused its discretion in limiting the scope of Reed's closing argument, any such error is harmless beyond a reasonable doubt. The State presented the testimony of witnesses and video recordings of the inside and outside of the store, and defense counsel cross-examined the witnesses and argued the deficiencies of the recordings. Although the trial court restricted the scope of Reed's closing argument to the extent it limited discussion of *Schaaf*, the court did not otherwise limit the closing argument and his defense counsel presented a thorough and careful argument that the evidence before the jury did not prove beyond a reasonable doubt that Reed aided or assisted Kersey in the commission of the theft and thus that he was not an accomplice to the crime. Reed was not denied an opportunity to present closing argument.

### *Conclusion*

[19]     We conclude that the trial court did not abuse its discretion or err in limiting the scope of closing argument and that Reed was not prejudiced or denied due process or an opportunity to present a closing argument.

[20]     For the foregoing reasons, we affirm Reed's conviction for theft as a class A misdemeanor.

Najam, J., and Kirsch, J., concur.